[No. D056713. Fourth Dist., Div. One. Nov. 24, 2010.]

In re the Marriage of SOLOMAN ROBERT and CAROL ADRIANNE STANTON.
SOLOMAN ROBERT STANTON, Appellant, v.
CAROL ADRIANNE STANTON, Respondent;
SAN DIEGO COUNTY DEPARTMENT OF CHILD SUPPORT
SERVICES, Intervener and Respondent.

## COUNSEL

Soloman Robert Stanton, in pro. per., for Appellant.

Law Offices of Andy Cook and Andy Cook for Respondent.

Edmund G. Brown, Jr., Attorney General, Douglas M. Press, Assistant Attorney General, Paul Reynaga and Mary Dahlberg, Deputy Attorneys General, for Intervener and Respondent.

## OPINION

**McCONNELL, P. J.**—An issue of first impression in California is raised in this dissolution action: Does the federal preemption doctrine prohibit the inclusion of military allowances for housing and food in a party's gross income for purposes of calculating child and spousal support, since under federal law such allowances are not taxable or subject to wage garnishment? We conclude the doctrine is inapplicable, as under United States Supreme Court authority family law support matters are within the province of state law unless " 'Congress has "positively required by direct enactment" that state law be pre-empted.' " (*Rose v. Rose* (1987) 481 U.S. 619, 625 [95 L.Ed.2d 599, 107 S.Ct. 2029] (*Rose*).) "Before a state law governing domestic relations will be overridden, it 'must do "major damage" to "clear and substantial" federal interests.' " (*Ibid.*) We join courts across the nation in holding such allowances are included in a party's gross income for purposes of support when state law encompasses them. We affirm orders denying Soloman Robert Stanton's requests for modification of awards of temporary child and spousal support to Carol Adrianne Stanton,[1] which are based in part on his military allowances.

### BACKGROUND[2]

The parties married in August 1993, and they have a teenage son. The parties separated in 2005 and in March 2007 Soloman filed for dissolution of the marriage. The dissolution was granted, effective March 2008.

---

[1] As is customary in family law matters in which the parties share a surname, we refer to them by their first names.

[2] Soloman, who has represented himself at the family court and on appeal, has breached basic principles of appellate practice by not citing the appellate record in support of his factual statements, or to show he raised his arguments below. To avoid delay, however, we exercise our discretion not to require corrections in his briefing as we are informed he is subject to

The parties had signed a stipulated marital settlement agreement (MSA), which purported to settle all financial issues, including support. After a hearing on September 1, 2009, however, the court granted Soloman's order to show cause (OSC) to set aside the MSA for equitable reasons, with the exception of the termination of the parties' marital status. The court's order states: "To make sure that some support orders are in effect no later than September 2, 2009, the Court schedules a review hearing for September 8, 2009."

After a hearing on September 2, 2009, the court awarded Carol $1,415 per month in temporary child support. After a hearing on September 8, the court awarded Carol $1,600 in temporary spousal support.[3] Soloman did not appeal those orders.

Soloman is a member of the United States Navy. In calculating temporary support, the court included in his gross income nontaxable military allowances, a basic allowance for housing (BAH) and a basic allowance for subsistence (BAS).[4] Soloman's May 2009 pay stub shows he had monthly base pay of $3,995.40, BAH of $2,159, BAS of $323.87, and special duty pay of $300. Carol's income and expense declaration stated Soloman had stopped paying child and spousal support and she had just begun working. She also has a young daughter.

On October 29, 2009, Soloman filed an OSC for a reduction in child support, and on November 4, he filed a petition for a modification of spousal support. His August 2009 pay stub showed his monthly base pay had increased to $4,474.80, and his BAH had increased to $2,199. His BAS and special duty pay remained $323.87 and $300, respectively. Carol's updated income and expense declaration stated gross monthly income of $2,097 as a graduate research assistant.

In his memoranda of points and authorities, the only argument Soloman raised was that the court erred by including his BAH and BAS in his gross income. He argued the court violated the federal preemption doctrine since

deployment in the near future. We grant his unopposed motion to augment the record. Earlier, we granted the unopposed motion of the San Diego County Department of Child Support Services (the Department) to augment the record.

[3] Child and spousal support were considered by different judicial officers. Because the Department is providing enforcement services to Carol, a commissioner heard the child support matter as required by the Family Code. (Fam. Code, §§ 4251, subd. (a), 17400; all future undesignated statutory references are to the Family Code.) A family law judge heard the spousal support matter. We refer to both the commissioner and the judge as the court.

[4] The BHA is a monthly payment for active military members that is intended to defray the cost of civilian housing. (37 U.S.C. § 403(a)(1).) The BSA is an additional monthly sum to subsidize the cost of meals purchased on or off base. (37 U.S.C. § 402(a)(1).)

federal law exempts military allowances from the definition of income for federal tax purposes, and they are not subject to wage garnishment for support arrears. The memoranda also claimed his updated income and expense declaration showed changed circumstances, but he developed no argument on the matter.

After a hearing on December 3, 2009, the court denied Soloman's OSC regarding child support. The court explained, "[I]f it looks like income, it is income no matter how it's paid to you. And this court has always considered BAH and BAS to be income." After a hearing on December 23, the court denied Soloman's motion for modification of temporary spousal support. The court again set temporary spousal support at $1,600 per month.

## DISCUSSION

### I

*Federal Preemption Is Proper Issue on Appeal*

Preliminarily, we address the Department's comment at oral argument that we need not reach the federal preemption issue because it is a legal issue, and we may affirm the December 2009 orders on the sole ground Soloman presented no changed factual circumstance justifying a modification of support. Since the September 2009 support orders are based in part on his BAH and BAS, the federal preemption issue arose then, and he did not challenge the orders on appeal and they are final.

Under state law, a "variety of interim, 'temporary' orders (also referred to as 'pendente lite' relief) may issue in domestic relations proceedings pending trial and ultimate judgment." (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2010) ch. 5, Scope Note, p. 5-1 (rev. # 1, 2010).) Pending final resolution of the case, the court may order one spouse to support the other and either or both parents to pay "any amount necessary" to support the children. (§ 3600.) "As a general rule, courts will not revise a child support order unless there has been a *'material change of circumstances.'* This rule applies to any form of child support order—i.e., whether pendente lite or 'permanent.' " (*Hogoboom & King, supra,* ¶ 17:25, p. 17-10.) The majority view is that the same general rule applies to temporary spousal support. (*Id.,* ¶ 17:139, pp. 17-35 to 17-36.)

Without a changed circumstances rule, " 'dissolution cases would have no finality and unhappy former spouses could bring repeated actions for

modification with no burden of showing a justification to change the order. Litigants " 'are entitled to attempt, with some degree of certainty, to reorder their finances and life style [*sic*] in reliance upon the finality of the decree.' " [Citation.] Absent a change of circumstances, a motion for modification is nothing more than an impermissible collateral attack on a prior final order.' " (*In re Marriage of Biderman* (1992) 5 Cal.App.4th 409, 412–413 [6 Cal.Rptr.2d 791].) This is true of temporary support orders, which are directly appealable as an exception to the one final judgment rule. (*In re Marriage of Skelley* (1976) 18 Cal.3d 365, 368 [134 Cal.Rptr. 197, 556 P.2d 297].)

There are, however, "some recognized exceptions to the general rule that collateral attack will not be allowed where there is fundamental jurisdiction [as here]. . . . For example, a judgment may be collaterally attacked where unusual circumstances were present that prevented an earlier and more appropriate attack." (*Pacific Mut. Life Ins. Co. v. McConnell* (1955) 44 Cal.2d 715, 727 [285 P.2d 636]; see *In re Marriage of Jackson* (2006) 136 Cal.App.4th 980, 988–989 [39 Cal.Rptr.3d 365] [collateral attack not allowed absent unusual circumstances or compelling policy considerations]; 2 Witkin, Cal. Procedure (5th ed. 2008) Jurisdiction, § 338, pp. 961–963.) For instance, in *Bierl v. McMahon* (1969) 270 Cal.App.2d 97, 104 [75 Cal.Rptr. 473], the court allowed a collateral attack on an out-of-state order establishing a contingency child support fund, when "the appellant personally attempted to object to [the] order . . . and was told by the court to remain silent and let his attorney speak."

Soloman asserts that because of the procedure the court adopted after setting aside the MSA on September 1, 2009—scheduling a child support hearing the following day and then awarding spousal support on September 8 at what he thought would be a review hearing—he was unprepared to address the federal preemption doctrine. He submits the matter was not argued on the merits until December 3 and 23, 2009, at the hearings on his OSC and motion for modification. The record does show that when the court set aside the MSA on September 1, 2009, it moved quickly to establish new support orders to avoid any gap in support.

At the hearing on Soloman's OSC for modification of child support, the court did not prohibit him from collaterally attacking the September 2009 support orders. Rather, it allowed him to thoroughly argue the merits of the federal preemption issue.[5] From this record, we may infer the court found unusual circumstances justifying a collateral attack. We conclude the court

---

[5] The record does not include a reporter's transcript from the September 23, 2009 hearing in which the court denied Soloman's motion to modify spousal support.

had jurisdiction to consider the issue, and its ruling is properly before us on appeal.

## II

### *Federal Preemption Doctrine Is Inapplicable to California Support Law*

#### A

■ Parents "have an equal responsibility to support their child in the manner suitable to the child's circumstances" (§ 3900), and "[e]ach parent should pay for the support of the children according to his or her ability" (§ 4053, subd. (d)). The amount of child support must be in accordance with a statewide uniform guideline. (§ 4055.) The calculation begins with a determination of the parents' "annual gross income," which "means income from whatever source derived." (§ 4058, subd. (a).) The court may consider "employee benefits," "taking into consideration the benefit to the employee, [and] any corresponding reduction in living expenses . . . ." (§ 4058, subd. (a)(3).) The statute expressly excludes income derived from certain sources, but it does not mention military allowances. (§ 4058, subd. (c).)

■ A temporary award of spousal support is intended "to maintain the living conditions and standards of the parties as closely as possible to the status quo, pending trial and the division of the assets and obligations of the parties." (*In re Marriage of McNaughton* (1983) 145 Cal.App.3d 845, 849 [194 Cal.Rptr. 176].) In setting permanent spousal support, the court must consider a variety of guidelines, including the "ability of the supporting party to pay spousal support, taking into account the supporting party's earning capacity, earned and unearned income, assets, and standard of living." (§ 4320, subd. (c).)

#### B

##### 1

■ "The supremacy clause of the United States Constitution establishes a constitutional choice-of-law rule, makes federal law paramount, and vests Congress with the power to preempt state law." (*Viva! Internat. Voice for Animals v. Adidas Promotional Retail Operations, Inc.* (2007) 41 Cal.4th 929, 935 [63 Cal.Rptr.3d 50, 162 P.3d 569] (*Viva!*), citing U.S. Const., art. VI, cl. 2.) In *Rose, supra*, 481 U.S. 619, 625, the United States Supreme Court explained: "We have consistently recognized that 'the whole subject of the

domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States.' [Citations.] 'On the rare occasion when state family law has come into conflict with a federal statute, this Court has limited review under the Supremacy Clause to a determination whether Congress has *"positively required by direct enactment"* that state law be pre-empted.' [Citation.] Before a state law governing domestic relations will be overridden, it 'must do "major damage" to "clear and substantial" federal interests.' " (Italics added.) Express preemption arises when Congress has explicitly stated its intent in statutory language. (*Viva!*, *supra*, at p. 936.)

It is Soloman's burden to show the applicability of the federal preemption doctrine. (*Viva!*, *supra*, 41 Cal.4th at p. 936.) An issue of federal preemption is a pure question of law we review independently. (*Paduano v. American Honda Motor Co., Inc.* (2009) 169 Cal.App.4th 1453, 1489 [88 Cal.Rptr.3d 90].)

2

Soloman has not met his burden. He cites no direct enactment showing Congress intended to disallow a state court's inclusion of military allowances such as BAH and BAS in a party's gross income for purposes of family support. He merely string cites an assortment of federal statutes and cursorily concludes the court exceeded its authority.

Soloman cites federal statutory definitions of military "pay" as including "basic pay, special pay, retainer pay, incentive pay, retired pay, and equivalent pay, but . . . not . . . allowances." (10 U.S.C. § 101(a)(15); 37 U.S.C. § 101(21).) He also cites a provision of the Internal Revenue Code that states, "Gross income shall not include any qualified military benefit." (26 U.S.C. § 134(a).) The term "qualified military benefit" means "any allowance or in-kind benefit" that a military member receives. (26 U.S.C. § 134(b)(1)(A).) He also cites a federal statute that excludes military allowances "payable pursuant to chapter 7 of title 37, United States Code [(37 U.S.C.S. § 401 et seq.)], as prescribed by the Secretaries concerned . . . as necessary for the efficient performance of duty," from income subject to withholding in a garnishment proceeding against the United States government to satisfy support obligations. (42 U.S.C. § 659(h)(1)(B)(ii); see 5 C.F.R. 581.104(h)(2)(ii), (iii) (2010).)

■ The nontaxable status of military allowances does not suggest Congress had any preemptive intent with regard to either child or spousal support.

In *In re Marriage of Alter* (2009) 171 Cal.App.4th 718 [89 Cal.Rptr.3d 849] (*Alter*), the court held recurring monetary gifts could be included in a parent's gross income for support purposes even though the federal tax code excludes gifts as taxable income. The court noted "section 4058 specifically includes some types of income, such as workers' compensation payments, that are excluded from taxable income under the Internal Revenue Code." (*Alter, supra,* at p. 735; see § 4058, subd. (a)(1).) The court explained that federal tax law and state support law have different purposes. "The Internal Revenue Code does not so much define the term 'income' as identify that which, consistent with prevailing federal tax policy, might be taxed. [Citation.] In contrast, California's child support statutes are designed to ensure that parents take 'equal responsibility to support their child in the manner suitable to the child's circumstances.' [Citation.] Section 4053, which lists the principles to be followed by the court in setting the child support award, states that the guideline takes into account the parents' *actual* income,' not their *taxable* income. A parent may have income that is not taxable but that would be available for support for the child. For example, components of a personal injury award paid on account of physical injury might be considered as income for child support even though such funds are expressly excluded from gross income under the Internal Revenue Code." (*Alter,* at p. 735.)

Soloman claims *Alter* is inapplicable as it does not pertain to BAH and BAS. The opinion's basic premise, however, is sound regardless of the nontaxable asset at issue. Further, courts in other jurisdictions have persuasively rejected the notion the nontaxable character of military allowances precludes them from being included in gross income. In *In re Marriage of Stokes* (2010) 234 Or.App. 566 [228 P.3d 701] (*Stokes*), an Oregon statute provided that in setting support the court should consider " '[a]ll earnings, income and resources of each parent . . . .' " (*Id.,* 228 P.3d at p. 704, quoting Or. Rev. Stat. § 25.275, subd. (1)(a).) A guideline defined gross income as including expense reimbursements received in the course of employment if they were significant and reduced personal living expenses. (*Stokes,* at p. 704.) Similar to this state's *Alter* opinion, the court noted Oregon law did not define gross income in terms of taxable income, and some listed sources of income included potentially nontaxable items such as Social Security and disability payments. The court also noted that a previous Oregon opinion held that earned income not subject to federal income tax should nonetheless be included in gross income for support purposes. (*Stokes,* at p. 705.) The *Stokes* court held that BAH and BAS payments "fall within the broad category of 'income from any source.' " (*Ibid.*) The court added, "Those allowances are paid to husband in his semi-monthly paychecks and are available to him to

spend as he desires. There is no reason why they should not be considered income for purposes of calculating husband's support obligation." (*Ibid.*)

In *Massey v. Evans* (N.Y.App.Div. 2009) 68 A.D.3d 79, 82–83 [886 N.Y.S.2d 280, 283] (*Massey*), the court also reached the same conclusion as the *Alter* court, in the context of military allowances: "[T]he purposes underlying the federal tax code and child support statutes are different. The objective of the former is to calculate an individual's taxable income, while the objective of the latter is to determine the amount that a parent can afford to pay for the support of his or her child." The court added: "Various federal regulations also support the conclusion that BAH and BAS are part of a member's compensation for military service (*see e.g.* 33 CFR 55.7 ['[t]otal family income' for purposes of child development services includes 'incentive and special pay for service or anything else of value, even if not taxable, that was received for providing services,' e.g., BAH and BAS]; 32 CFR 54.4 [allowances for subsistence and housing are included within a member's 'disposable earnings' pursuant to 42 USC § 665 for purposes of calculating child support allotments]). Federal law thus recognizes that BAH, BAS and the associated tax advantages of such allowances provide members of the military with a valuable employment benefit that is not reflected in their base pay." (*Massey*, 886 N.Y.S.2d at pp. 283–284.)

In *State, DSS ex rel. D.F. v. L.T.* (La. 2006) 934 So.2d 687, 693–694, the court likewise held the federal preemption doctrine is inapplicable to BAS and BAH payments despite their nontaxable status. The court relied in part on an article in the Military Law Review, which states: " 'In general, all of a soldier's . . . pay and allowances should be considered as income for the purposes of setting the [child] support obligation. (Citation footnotes omitted.) Many soldiers live in government accommodations and eat in the mess hall for free. This "in kind" income . . . may justify an upward adjustment in support owed. Moreover, Basic Allowance for Quarters (BAQ [(now BAH)]), Basic Allowance for Subsistence (BAS) . . . and military . . . payments can constitute large portions of a soldier's . . . total income. These items, however, are not taxable. If the state guidelines are based on gross pay, . . . the soldier's income should be adjusted upward to account for the increased value of nontaxable income.' " (*State, DSS ex rel. D.F. v. L.T., supra*, 934 So.2d at p. 693, quoting Connor, *Resolving Child Support Issues Beyond the Scope of AR 608-99* (1991) 132 Mil. L.Rev. 67, 78.)

■ Additionally, the protection of certain military allowances from wage garnishment for support arrearages does not indicate Congress intended to preempt state family support law. In *Rose, supra*, 481 U.S. 619, the court

held the federal preemption doctrine did not prohibit the State of Tennessee from holding a military veteran in contempt for nonpayment of child support when the support was based on disability payments not subject to garnishment, and such payments were his only means for satisfying his support obligation. A federal statute excluded from garnishment " 'any payments by the Veterans' Administration as compensation for a service-connected disability.' " (*Id.* at p. 634.) The veteran argued the exclusion "embodies Congress' intent that veterans' disability benefits not be subject to *any* legal process aimed at diverting funds for child support, including a state-court contempt proceeding." (*Id.* at p. 635.) The court rejected the theory, explaining the garnishment statute did not apply to *any* proceeding, but rather applied to state proceedings against agencies of the United States government to attach funds held by the agencies. (*Ibid.*) The purpose of federal garnishment law is "to avoid sovereign immunity problems, not to shield income from valid support orders." (*In re Marriage of McGowan* (1994) 265 Ill.App.3d 976 [202 Ill.Dec. 827, 638 N.E.2d 695, 698].)

Similarly, in *Massey, supra,* 886 N.Y.S.2d at page 283, the court held the "federal statutory definition of 'pay' [(37 U.S.C. § 101(21))] [(garnishment statute)] is not relevant to the issue whether military allowances constitute income for purposes of calculating a member's child support obligation under New York law. In any event, federal law defines 'regular compensation' or 'regular military compensation' as [including] '. . . *basic allowance for housing* [and] *basic allowance for subsistence* . . . .' " (*Massey, supra,* at p. 283, citing 37 U.S.C. § 101(25), italics added by *Massey* court.) Other courts have also "determined that military allowances are a species of remuneration subject to child support payments." (*State, DSS ex rel. D.F. v. L.T., supra,* 934 So.2d at p. 693, citing *Alexander v. Armstrong* (1992) 415 Pa.Super. 263 [609 A.2d 183]; *Merkel v. Merkel* (1988) 51 Ohio App.3d 110 [554 N.E.2d 1346]; *Jackson v. Jackson* (Minn.Ct.App. 1987) 403 N.W.2d 248.)[6]

---

[6] The following opinions also hold military allowances are includable in gross income for purposes of family law support: *Norman v. Norman* (Ala.Civ.App. 2010) 50 So.3d 1107, 1108; *Wiebusch v. Wiebusch* (2010) 186 Ohio App.3d 237 [2010 Ohio 504, 927 N.E.2d 64, 67–68]; *Hixon v. Lundy* (Iowa Ct.App. 2004) 695 N.W.2d 333; *In re Marriage of Baylor* (2001) 324 Ill.App.3d 213 [257 Ill.Dec. 638, 753 N.E.2d 1264, 1267]; *State ex rel. Hopkins v. Batt* (1998) 253 Neb. 852 [573 N.W.2d 425, 435]; *In re Marriage of Long* (Colo.Ct.App. 1996) 921 P.2d 67, 69; *Meyer v. Meyer* (Neb.Ct.App., Nov. 14, 1995, No. A-93-579) 1995 Neb.App. Lexis 360, page *9; *Barnes v. State ex rel. Cassady* (Ala.Civ.App. 1994) 636 So.2d 425, 427; *In re Marriage of McGowan, supra,* 638 N.E.2d at p. 698; *Hautala v. Hautala* (S.D. 1988) 417 N.W.2d 879, 881; *Peterson v. Peterson* (1982) 98 N.M. 744 [652 P.2d 1195, 1198].

Soloman's reliance on *Pegler v. Pegler* (Ky.App.Ct. 1995) 895 S.W.2d 580, is misplaced. In *Pegler*, a state statute provided that expense reimbursements received by a parent in the course of employment shall be counted as income " '*if they are significant* and reduce personal living expenses such as . . . free housing. . . .' " (*Id.* at p. 582, original italics.) The appellate court held the trial court had discretion to determine whether reimbursements were significant, and it could not say there was any abuse of discretion in the trial court's determination the particular housing reimbursements under scrutiny were insignificant. (*Ibid.*) *Pegler* does not pertain to a statute similar to California support law, or to federal preemption. There is no question here as to the significance of Soloman's military allowances.

Similarly, *Kelly v. Kelly* (Conn.Super.Ct., Dec. 18, 2003, No. FA920111299) 2003 Conn.Super. Lexis 3573, is unhelpful to Soloman. In *Kelly*, a state statute provided that for purposes of determining child support "gross income is defined to include 'employment perquisites and in-kind compensation (any basic maintenance or special need such as food, shelter or transportation provided on a recurrent basis in lieu or in addition to salary or wages)'; and 'military personnel fringe benefit payments.' " (*Id.* at p. *5.) The court held the wife did not meet her burden of showing BAS payments qualified as a "perk" or a "military fringe benefit." (*Id.* at pp. *8–*9.) The court explained, "A common theme consistent with determinations that include the value of an employer reimbursement as income, is that the payment of the 'perk' is for a non-business related expense." (*Id.* at p. *7.) Without contrary evidence, the court concluded the BAS was "a direct expense associated with [the husband's] responsibilities and duties necessary to the performance of his employment." (*Id.* at p. *8.) The court also explained that a " 'fringe benefit' implies the receipt of a 'free benefit, such as health insurance or a pension received by an employee.' " (*Id.* at p. *9.) *Kelly* does not pertain to federal preemption, or to statutes similar to California's law on support.

█ We join other courts in holding federal preemption is inapplicable to military allowances such as BAH and BAS. The inclusion of such allowances does not do major damage to a clear and substantial federal interest. (*Rose, supra*, 481 U.S. at p. 625.) "To the contrary, the Department of Defense by regulation and otherwise encourages members of the armed forces to fulfil their family commitments." (*In re Marriage of McGowan, supra*, 638 N.E.2d at p. 698; see *Norman v. Norman, supra*, 50 So.3d at pp. 1109, 1110.)

## III

### *Exclusion of Spousal Support from Carol's Gross Income*

■ Soloman's OSC for a reduction of child support claimed as a changed circumstance the court's September 2009 order awarding Carol $1,600 in spousal support. The Family Code, however, precludes the court from including the spousal support in Carol's gross income. A parent's annual gross income for child support purposes includes "spousal support actually received from a person *not a party to the proceeding*." (§ 4058, subd. (a)(1), italics added.) "By necessary implication, the Legislature did not intend the inclusion of spousal support from a person who is a party to the proceeding. Otherwise, spousal support, without qualification, would have been included in the list of qualifying income." (*In re Marriage of Corman* (1997) 59 Cal.App.4th 1492, 1499 [69 Cal.Rptr.2d 880].)

Soloman claims section 4058, subdivision (a)(1) violates his substantive due process rights. We decline to consider the matter, however, because he develops no particular due process argument and cites no supporting legal authority. When a party provides a brief without argument or citation of authority, we may "treat the points as waived, or meritless, and pass them without further consideration." (*Troensegaard v. Silvercrest Industries, Inc.* (1985) 175 Cal.App.3d 218, 228 [220 Cal.Rptr. 712].)

## IV

### *Additional Issues*

The list of issues in Soloman's opening brief includes the issue of whether the court abused its discretion by not considering the disparity in the parties' costs of living—his in San Diego, California, and hers in Portland, Oregon. He has waived appellate review of the issue, however, by not developing any particular argument or citing any supporting legal authority on the matter. Again, "parties are required to include argument and citation to authority in their briefs, and the absence of these necessary elements allows this court to treat appellant's . . . issue as waived." (*Interinsurance Exchange v. Collins* (1994) 30 Cal.App.4th 1445, 1448 [37 Cal.Rptr.2d 126].)

Further, for the first time in his reply brief, Soloman contends he submitted evidence showing changed circumstances justifying a reduction in child and spousal support, based on the parties' updated income and expense declarations. He abandoned the issue by not raising it in his opening brief. (*California Recreation Industries v. Kierstead* (1988) 199 Cal.App.3d 203, 205, fn. 1 [244 Cal.Rptr. 632].)

## DISPOSITION

The orders are affirmed. Carol is entitled to costs on appeal.

McDonald, J., and O'Rourke, J., concurred.

A petition for a rehearing was denied December 2, 2010, and appellant's petition for review by the Supreme Court was denied February 23, 2011, S189315.