Filed 3/13/13  M.V. v. J.V. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| M.V., | D061474 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. DS41687) |
| J.V., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Roderick W. Shelton, Judge.  Reversed.

Appellant M.V. (Mother) appeals from a postjudgment order modifying and eliminating certain child support obligations of the child's father, respondent J.V. (Father).  Those obligations were originally established by a stipulated judgment in this paternity action that referred to Father's ownership of substantial assets from which the

support would be paid, without regard to his monthly income. (Fam. Code,[1] §§ 3587, 4053 et seq., 7600 (the Uniform Parentage Act).) In the initial phase of this proceeding, the family court denied Father's request to set aside the stipulated judgment, and that order has not been challenged and is well supported by the record.

Mother appeals the family court's order that (1) granted the motion by Father to modify and decrease his stipulated support obligations in several respects, i.e., the duration (from age 21 to age 18) and amount of the monthly payments (from $3,000 to $928) and educational expenses, and (2) denied Mother's informal and formal motions to continue the hearing for discovery of the value and existence of his assets, as they had been referenced in the stipulated judgment. In its ruling, the court stated its view that the parties' agreement was unfair, because it was different from the usual support orders, and it should not be enforced. (§ 3901, subd. (a) [support obligation ordinarily runs until age 18 or high school completed].)

On appeal, Mother contends the family court abused its discretion, acted without sufficient support in the evidence, or exceeded its jurisdiction when it reduced the amount and duration of the monthly support, and set aside or modified several educational expense provisions in the stipulated judgment. She contends she showed ample grounds for a continuance of the hearing to seek discovery about Father's assets, because he did not file an income and expense declaration (I&E declaration) until shortly before the April 6, 2011 hearing, to put his assets at issue.

---

[1] All further statutory references are to the Family Code unless noted.

2

Representing himself on appeal, Father responds that Mother failed to supply credible proof that he had any significant assets, as referred to in the stipulated judgment, and the court was justified in denying her requested continuances for discovery. He points out that his motion was originally filed in November 2010 and then continued, so that Mother could have sought discovery earlier. He also claims the family court correctly concluded on the available evidence that he had sufficiently shown a change of circumstances regarding his monthly income and disability status, with respect to both the monthly support and the educational expenses.

We conclude Mother's challenges to the order are well taken, and the record demonstrates that the family court lacked any adequate basis in the evidence to exercise its discretion in the manner it did on the child support issues, and under all the relevant circumstances, it was an abuse of discretion to deny the requested continuance to allow further discovery about Father's assets. Moreover, the family court misinterpreted the terms of the parties' agreement with respect to the duration of child support ordered and the educational expense issues, and it erred in altering that agreement through these modification proceedings, which constituted an impermissible collateral attack on the stipulated judgment, but without a proper showing. (See *In re Marriage of Stanton* (2010) 190 Cal.App.4th 547, 554.) We reverse the order.

# I

## *BACKGROUND*

### A.  Stipulated Judgment on Paternity and Support

We set forth only those facts that are relevant to the issues on appeal.  The record shows that the parties, who were never married, entered into a May 2010 stipulation for entry of judgment establishing paternity of their daughter, born in 2006 (the stipulated judgment or SJP, which resembles a marital settlement agreement (MSA) confirmed by a judgment).  The stipulation provides for sole legal and physical custody in Mother and for Father to pay specified child support and expenses, and provides for a reservation of jurisdiction to the court to resolve any disputes arising out of the agreement.  Notice of entry of judgment was given in May 2010.

Although the stipulated judgment covers a number of topics, this appeal concerns only the provisions for monthly child support, clothing expenses, and for support payments for private high school, university expenses and possibly graduate school. Regarding monthly child support, the SJP states that Father shall pay to Mother $3,000 per month for child support, as well as bearing all clothing, school uniform and shoe expenses.[2]  The duration of this obligation was stated to be until the child reached the age of 21 and is no longer a full-time student, or when she marries, dies, or completes her university studies.  The SJP states, "It is the parties' mutual desire that child support

---

[2]     The parties' agreement that Father would pay additional child support consisting of the child's clothing expenses, including shoes and any school uniforms, does not mention private elementary school, and the precollege agreement apparently was limited to the child attending private high school.

4

continue until the child has completed her university Baccalaureate and any postgraduate degrees."

Next, the agreement states that the parties had agreed upon the child support amounts and expenses stated above, in light of Father's refusal in these proceedings to provide any completed I&E declaration. However, Father represented by signing the agreement "that he has the ability to pay all support and expense payments set forth in this agreement and that he anticipates that he will have sufficient assets and income to pay all of the child support and expenses," as had been set forth. "Father further represents that the income from his current or future employment is not necessary for him to meet the obligations set forth in this Agreement because the Father has sufficient assets and other sources from which to pay the support and expenses," as above, and Father represented himself to be a high income earner within the meaning of section 4057. The agreement accordingly sets forth a presumption, based on Father's representations, that he cannot request a downward modification of child support, "absent a very strong and specific showing of changed circumstances." The parties acknowledged their rights under California child support guidelines, along with their agreement to change that level of child support.

Regarding private high school expenses, paragraph 10A of the SJP states the parties' mutual desire that the child would attend private high school and university, and that Father would pay as additional child support 100 percent of private school tuition, book costs, fees and associated expenses.

Regarding university expenses, paragraph 10C of the SJP states the parties' mutual desire that the child attend college, "and possibly graduate school," after graduating from high school, and that absent any other independent funding source, Father shall pay 100 percent of the cost of books, tuition, room, board, and fees for college or university, "in the [child's] conscientious pursuit of an initial Baccalaureate and/or postgraduate degree."

B.  April 2011 Motion to Modify Support Amount; Denial of Motion to Set Aside

In November 2010, Father filed a motion to set aside the SJP, or in the alternative to modify custody and support.  (Code Civ. Proc., § 473, subd. (b).)  After a stipulated continuance, he filed an I&E declaration two days before the April 6, 2011 hearing.  Both parties had legal representation, and Mother filed opposition papers.  At the first hearing, the trial court denied his request to set aside the SJP, and deferred the financial issues for further hearings.

At four days of hearings over several months, the court took declarations and heard testimony from several witnesses, including the parties.  Father sought to decrease his monthly support obligation from $3,000 per month, because he stated he had voluntarily resigned his job as a deputy attorney general with the Baja California office in Mexico, and reduced his income from about $14,500/month to $0 (all in U.S. dollar amounts).  As of March 2011, he was on temporary disability for finger surgery.  His I&E declaration stated he had $150,000 in personal property, $2,500 cash, but no real property.  His 2009 tax return showed he had income of $172,513.50.

In Father's I&E declaration of May 13, 2011, he stated that his monthly gross income was now $4,652 per month, with total expenses of $3,860.  A revised declaration

6

dated May 17, 2011 showed a further reduction in income and expenses. He had obtained a new job, district attorney supervisor, and was living in Tijuana in a condominium for which his employee (Attorney Marcos Valenzuela) held title. Father paid $350 monthly maintenance costs, not rent. He stated that he did not own any real property or businesses, although his father Jorge Rodriguez-Pacheco (Grandfather) and family owned several.

In rebuttal, Mother filed declarations and her own I&E declaration, stating that Father had resigned his position to obtain a higher position within the federal attorney general system. She said Father owned or pursued a money lending business called Auto Money, and he had five offices for this business and earned about $20,000 per month from it, for a total monthly income of about $80,000 from his work and properties. According to Mother, Father bought real estate in his mother's name and his brothers' names. He had income from an inheritance from his grandmother, a tire warehouse in Mexico City.

Mother received some rental payments from Father for a warehouse that Mother owned in Mexicali, that Father managed for her, although it was unclear whether those payments were also in the nature of child support, as Father had reported them differently to United States and Mexican authorities. Mother, also an attorney, operated a law practice at a loss and she owned $200,000 in real and personal property. Her 2010 taxes showed an income of $9,950. She was living in section 8 low income housing in the San Ysidro area with the child and her other children. She claimed Father paid child support to her up until February 2011.

C.  May 2011 Mother's Motion for Continuance; August 2011 Ruling

In May 2011, Mother provided a copy of a January 2010 real property purchase agreement for a Coronado house, priced at $885,000, with Father and a friend listed as the purchasers, and showing a cash deposit of $26,550.  Mother orally requested that the hearing be continued so that she could take discovery of the income and expenses that Father listed, and others, and a ruling was deferred.  Mother filed a written motion to continue the financial issues on June 2, 2011, supported by her declaration about the extent of her knowledge of assets that Father held in the name of others in Mexico.  The court denied any continuance at the June 17 hearing.

Father filed further responses and lodged recent pay stubs.  He testified that by April 2011, he was using his savings to pay Mother the monthly $3,000 child support, and the assets he held were the same both in May 2010, when the stipulated judgment was entered, and in May 2011, at the time of the hearing.

In July 2011, Mother lodged translated declarations from Father's half-sister and from Grandfather, about their respective knowledge of assets that Father held in Mexico. Mother updated her I&E declaration in August 2011.  At the hearing, Mother testified about her limited knowledge of the real properties and businesses that Father was operating, as well as stating that he often received valuable gifts in the course of his legal work for favors he gave.  He drove cars that were registered in the names of others, obtained gasoline subsidies from work, and did not pay rent.  Father filed a rebuttal declaration from Grandfather, denying he told Mother anything about Father's assets. Father stated that he was not a corrupt official, and the gifts were not improper.

8

At the close of the August 5, 2011 hearing, the court issued a tentative and then a final ruling, as an oral statement of decision. The court ordered that Mother and Father should share joint legal custody, and Father had a 25 percent timeshare. The court stated its belief that the stipulated agreement regarding child support past age 18 was not fair, and the duration of the support obligation was reduced from age 21 to age 18, as the court stated that was customary under section 3901.

In explaining its support ruling, the court stated, "I'm going to only look at evidence I have in front of me, and that's going to be payment stubs. With that being said, when [Father] makes more money, [Mother] can always come back and ask for an increase in child support, and that's just how it works. But for right now, I'm going to use the income that I do have."

The court next inquired whether Father's income on the pay stubs was in pesos or dollars, and counsel discussed the income and deductions. Counsel for Mother stated that the only recent tax return (2009) showed that Father had income of $172,513.50, averaging out to $14,376.21 per month, from employment. She therefore argued he had the ability to earn $14,000 per month, but due to the denial of her motion for discovery, Mother had been unable to take his deposition to learn what his income was in 2010 and to inquire into his bank accounts and other assets, including houses in Coronado, Tijuana, and Mexico City. In response, the court said, "That's based upon [Mother's] testimony, though, no physical evidence. That's only based on testimony." Counsel for Mother responded, "Your Honor, the physical evidence exists, but since I haven't been able to do

9

discovery" (due to Father's surgery schedule and lack of information about his assets), she continued to object that no sufficient changed circumstances had been shown.

The court then determined that Father had a gross salary of $5,180 per month (net adjusted $4,629), and Mother's net income was $1,257. This calculation resulted in a child support guidelines award of $928 per month, because the court said Father had met his burden as far as a change of circumstances (being on disability since Mar. 2011), and this was a temporary order, until he was back to working full time.

Next, the court's order altered and decreased the stipulated educational expenses obligations, regarding (1) private high school, from all expenses per month to $0; (2) college, from all expenses to one-half of the expenses, (3) postcollege schooling, from all expenses to $0. Other orders were made regarding insurance and attorney fees (not contested here). Mother appeals.

## II

### *APPLICABLE STANDARDS*

#### A. Duty of Support

"A parent's duty of support continues as to an unmarried child who has attained age 18, is a full-time high school student, and is not self-supporting until the child completes the 12th grade or reaches age 19, whichever occurs first." (§ 3901, subd. (a); 10 Witkin, Summary of Cal. Law (10th ed. 2008) Parent & Child, § 422, p. 528.) "[Section] 3901[, subdivision] (a) does not limit a parent's ability to agree to provide additional support or the court's power to inquire whether such an agreement has been made. (§ 3901[, subd.] (b).)" (10 Witkin, *supra*, § 422, p. 528; § 4053 [each parent

10

should support child to extent of ability]; *M.S. v. O.S.* (2009) 176 Cal.App.4th 548, 553-557 [support principles applied in paternity case].)

The Supreme Court has long recognized: "There is nothing in the law to prevent a parent from contracting to support a child, minor or adult, married or unmarried. And when the agreement . . . is founded upon sufficient consideration, the contractual obligation is not measured by legal duties otherwise imposed. No principle of public policy intervenes to prevent such a contract and the courts have no right by a process of interpretation to release one of the contracting parties from disadvantageous terms actually agreed upon." (*Kamper v. Waldon* (1941) 17 Cal.2d 718, 721.)

A comparable written, signed agreement by married parents to increase court-ordered child support payments is enforceable under ordinary contract law or through an enforcement motion under Code of Civil Procedure section 664.6. (*In re Marriage of Armato* (2001) 88 Cal.App.4th 1030, 1045-1047; Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2012) ¶¶ 17:25-17.25.5, pp. 17-10 to 17-11 (Family Law).) Any modification of such an agreement, and likewise of this paternity settlement agreement, requires an evidentiary hearing on contested factual issues, and a resulting judicial determination based on admissible evidence that showed a material change of circumstances at the time the modification is sought. (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 298-299 (*Cheriton*).)

11

### B. Basic Rules of Review; Discretion of Family Court

Appellate courts apply these standards of review to orders that modify statutory child support obligations, as set forth in *In re Marriage of Williams* (2007) 150 Cal.App.4th 1221 (*Williams*):

> " '[A] determination regarding a request for modification of a child support order will be affirmed unless the trial court abused its discretion, and it will be reversed only if prejudicial error is found from examining the record below.' [Citations.] Thus, '[t]he ultimate determination of whether the individual facts of the case warrant modification of support is within the discretion of the trial court. [Citation.] The reviewing court will resolve any conflicts in the evidence in favor of the trial court's determination. [Citation.]' [Citation.] [¶] '. . . Furthermore, "in reviewing child support orders we must also recognize that determination of a child support obligation is a highly regulated area of the law, and the only discretion a trial court possesses is the discretion provided by statute or rule. [Citations.]" [Citation.] In short, the trial court's discretion is not so broad that it "may ignore or contravene the purposes of the law regarding . . . child support." ' " (*Id*. at pp. 1233-1234.)

In considering if an abuse of discretion has occurred, the appellate court reviews the record to determine if the court's factual determinations are supported by substantial evidence: "Our review is limited to determining whether the court's factual determinations are supported by substantial evidence and whether the court acted reasonably in exercising its discretion. [Citation.] We do not substitute our judgment for that of the trial court, but confine ourselves to determining whether any judge could have reasonably made the challenged order." (*In re Marriage of De Guigne* (2002) 97 Cal.App.4th 1353, 1360 (*De Guigne*).)

For modification of a final child support order, the moving party (Father) had the burden of showing changed circumstances. (*Montenegro v. Diaz* (2001) 26 Cal.4th 249,

12

256; *Williams, supra,* 150 Cal.App.4th 1221, 1234.) At the appellate stage, Mother bears the burden of showing that a prejudicial abuse of discretion occurred. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1291.) Regarding her claims about the denial of her continuance request, for purposes of discovery, the issue on appeal is whether the trial court abused its discretion. "A motion for continuance is addressed to the sound discretion of the trial court. [Citation.] However, ' "[t]he trial judge must exercise his discretion with due regard to all interests involved, and the refusal of a continuance which has the practical effect of denying the applicant a fair hearing is reversible error. [Citations.]" ' " (*Oliveros v. County of Los Angeles* (2004) 120 Cal.App.4th 1389, 1395, citing *In re Marriage of Hoffmeister* (1984) 161 Cal.App.3d 1163, 1169.)

### C. Effect of SJP

Father's formal child support obligations originated in a paternity settlement agreement and stipulated judgment confirming the agreement. Such an obligation is "law-imposed" within the meaning of section 3585, because it requires payments arising out of the parental relationship as confirmed by court order. (See Family Law, *supra*, ¶ 18:118-120, pp. 18-36 to 18-37.)[3] Such an agreement may alter the usual statutory child support obligation, that a parent is released from the legal duty of support of a minor child when the child turns 18, graduates from high school or becomes

---

3    Section 3585 provides, "The provisions of an agreement between the parents for child support shall be deemed to be separate and severable from all other provisions of the agreement relating to property and support of the wife or husband. An order for child support based on the agreement shall be law-imposed and shall be made under the power of the court to order child support."

13

emancipated. (§ 3901, subd. (a); 10 Witkin, Summary of Cal. Law, *supra,* Parent & Child, §§ 421, pp. 527-528 [under § 3587, "Notwithstanding any other provision of law, the court has authority to (1) approve a stipulated agreement by the parents to pay for the support of an adult child or for the continuation of child support after a child attains age 18; and (2) make a support order to effectuate that agreement."].)[4]

It is well established that parents can make an agreement to the contrary of statute, to voluntarily assume a greater obligation of support: "Upon sufficient consideration the parent may agree and be bound to do more than the statute requires, so long as the additional obligation is not contrary to nor inconsistent with the statutory provision." (*Kamper v. Waldon, supra*, 17 Cal.2d 718, 720.) Although Father objects that this authority is distinguishable simply because it arose out of a marriage case, it is clear that this paternity judgment is equivalent to a dissolution judgment for our purposes, the analysis of support principles and interpretation of an incorporated settlement agreement. As a matter of law, the stipulation was merged into the terms of the judgment, similar to a marital property rights adjudication. (See *In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1220-1221; see Family Law, *supra*, ¶ 17:340 et seq., pp. 17-86 to 17-87 [stating, inter alia, that the parties cannot relitigate the division of property disposed of by a final judgment].)

---

4       No issues exist here about the separate statutory scheme for support of a disabled indigent adult child. (See 10 Witkin, Summary of Cal. Law, *supra,* Parent & Child, § 423, pp. 528-530 [discussing § 3910].)

14

To interpret the order and the parties' agreement regarding child support in light of these principles, we will first address those provisions applicable to Father's statutory and contractual obligations of monthly child support until age 18 or the completion of high school (which remained modifiable by the court; part III, *post*). "When a child support agreement is incorporated in a child support order, the obligation created is deemed court-imposed rather than contractual, and the order is subsequently modifiable despite the agreement's language to the contrary." (*Armstrong v. Armstrong* (1976) 15 Cal.3d 942, 947.)

Following that discussion, we will turn to the arguments about the other contractual provisions of the SJP, regarding educational expenses and support after age 18. As with a marital settlement agreement that is incorporated into a judgment of dissolution, this appellate court will independently interpret the questions of law presented by the parties' agreement. (Part IV, *post*; *In re Marriage of Davis* (2004) 120 Cal.App.4th 1007, 1017-1018 (*Davis*).)

III

*MONTHLY SUPPORT; DENIAL OF CONTINUANCE*

Mother contends the family court abused its discretion, or acted without sufficient support in the evidence, when modifying and decreasing the amount of Father's monthly child support obligation, as well as reducing to zero his obligation to pay the pre-age 18 expenses for clothing, such as school uniforms. Since the SJP does not expressly cover private elementary school tuition, we will defer discussion of the private high school issues until part IV, *post*. For this child who was five years old at the time of the hearing,

15

all the support issues are closely intertwined with the denial of Mother's requested continuance for the purpose of obtaining discovery about Father's assets, to supplement the information that he had provided about his monthly income.

A.  Standards for Setting Child Support Obligations:  Income

Section 4058, subdivision (a) outlines the components of a parent's "annual gross income" for support purposes, as meaning "income from whatever source derived," except as otherwise specified in the section, and income can be imputed based on earning capacity.  (*Cheriton, supra*, 92 Cal.App.4th 269, 301; *In re Marriage of Rocha* (1998) 68 Cal.App.4th 514, 516-517.)  Such attribution of income is allowed where necessary to protect the child's best interests.  (§ 4058, subd. (b); *De Guigne*, *supra*, 97 Cal.App.4th 1353, 1363.)  On appeal of a child support award, the family court's interpretation of statutory definitions (e.g., income) will be reviewed de novo.  (*In re Marriage of Pearlstein* (2006) 137 Cal.App.4th 1361, 1371-1372.)

Where a stipulated order has been made for child support above the guidelines amount, the court is without authority to change that order, unless a showing of materially changed circumstances is made.  (*Williams, supra*, 150 Cal.App.4th 1221, 1234-1235; *In re Marriage of Laudeman* (2001) 92 Cal.App.4th 1009, 1015; Family Law, *supra*, ¶ 17:30, pp. 17-13; *In re Marriage of Stanton*, *supra*, 190 Cal.App.4th 547, 553.)  Absent such a change of circumstances, a modification motion would be " ' "nothing more than an impermissible collateral attack on a prior final order." ' "  (*Id*. at p. 554; Family Law, *supra*, ¶ 17:25, pp. 17-10 to 17-11.)

16

At the time the SJP was confirmed, Father admitted he had a high earning capacity within the meaning of section 4057, and over the relevant time period in 2010-2011, he had held several positions in the Mexican federal legal system, had resigned, and had been rehired.  At the time the court ruled, Father had recently changed jobs and was on temporary disability, which affected his monthly income, as the court acknowledged when relying upon his pay stubs as the controlling evidence before it.  However, that was not the only potentially relevant and reasonably available evidence to be factored into the support calculation, as we next discuss.

### B.  Child Support Obligations; Effect of Assets, Investments, and Gifts

In calculating child support, the courts take into account both parents' " 'net monthly disposable income,' " as well as the parents' " 'annual gross income.' "  (*In re Marriage of Alter* (2009) 171 Cal.App.4th 718, 731 (*Alter*).)  " 'Income from other sources . . . should properly be factored into the "annual gross income" computation. [Citations.]' [Citation.]"  (*Cheriton, supra,* 92 Cal.App.4th 269, 285.)  "The judicially recognized sources of income cover a wide gamut."  (*Ibid.*)

In the context of computing child support, the assets owned by a parent "may enter indirectly into the calculation in two ways:  (1) In assessing earning capacity, a trial court may take into account the earnings from invested assets [citation]; and (2) a court may deem assets a 'special circumstance' [citation] that may justify a departure from the guideline figure for support payments [citation].  But these are exceptional situations; the child support obligation is based primarily on actual earnings and earning capacity."

17

(*Mejia v. Reed* (2003) 31 Cal.4th 657, 671; see *Cheriton, supra,* 92 Cal.App.4th at p. 292; § 4057, subd. (b)(5).)

In assessing earning capacity, the court in *Cheriton* determined that the trial court had erred in failing to include the father's stock options proceeds and proceeds from the sale of stock in determining his income. (*Cheriton*, *supra*, 92 Cal.App.4th at pp. 289-292.)  There, the court concluded that "the trial court's refusal to consider [the father's] substantial wealth in setting child support may have resulted in an order that is too low to be in the best interests of his children, based on an assessment of their reasonable needs." (*Cheriton*, *supra*, at p. 292.)  The trial court was required to determine whether to impute reasonable income to the father's assets.  (*Ibid*.)

Even where the supporting party has "non-income-producing assets, the trial court has discretion to impute income to those assets based on an assumed reasonable rate of return."  (*In re Marriage of Pearlstein*, *supra*, 137 Cal.App.4th 1361, 1373-1374, fn. omitted; *County of Kern v. Castle* (1999) 75 Cal.App.4th 1442, 1453-1454 [a trial court may impute income based on interest that could be earned from investment of a lump sum inheritance].)

In *Williams*, *supra*, 150 Cal.App.4th at page 1241, the court determined that a trial court acted within its discretion under section 4058, subdivision (b) in "implicitly determin[ing] that the children's best interests would be served by an increase in guideline child support, calculated in part by attributing an assumed 3 percent rate of return on [father's] investment assets."  A court may have great latitude in applying the statutory scheme to individual cases.  (*Williams*, *supra*, at p. 1240.)

18

Likewise, where a supporting parent can reasonably expect to receive cash or easily valued or negotiable gifts on a consistent basis, they may be deemed a regular part of income, and the trial court is permitted to include such gifts in the income calculation. (*Alter, supra,* 171 Cal.App.4th 718, 734-737.)  This can include free rent received by a parent.  (*Id*. at p. 734.)

### C.  Respective Showings:  Pre-age 18 Support

As the moving party seeking modification downward to a guidelines amount, Father brought forward evidence about his recent earnings at his job.  His 2009 tax return (the most recent one available) showed that he made approximately $172,500 in U.S. dollars, or $14,500 per month.  At the time of the hearings in 2011, his declaration and testimony stated he was on four to six months of disability leave, at a reduced salary level.  He provided pay stubs from the April through May 2011 period, showing a current income of around $5,000 per month.

Mother attempted to rebut this showing by arguing she was unduly hampered in obtaining information about Father's assets, by Father's practice of putting his various real property and business assets in the names of friends and relatives.  These included a tire store in Mexico City that was in the name of his grandmother, the residence in Coronado, the condominium in Tijuana, and several income producing properties in Mexico, held in the names of Father's relatives or employees.  During their relationship, Mother had participated with Father in managing some of his assets, and she gave testimony about the Mexicali warehouse that she owned and he managed in the course of running his lending business.  Mother also owned a house for her mother to live in, and an office

19

condominium. She testified that she learned during their relationship that Father regularly received valuable gifts in connection with his work duties within the federal Mexican legal system, a gasoline subsidy and bonuses.

### D. Order; Evident Abuse of Discretion

The family court made a guidelines calculation solely based on Father's recent pay stubs that were readily available, and ruled that Father had showed changed circumstances for a modification of support because Father was currently on disability. The court stated that Mother had presented only undocumented testimony about Father's assets, other than his salary, and the court would therefore rely only on the salary evidence before it. According to Father, that ruling shows only that the court thought Mother was not a credible witness. Alternatively, Father argues that if income should be imputed to his assets, it should also be imputed to Mother's assets.

The problem with Father's position is that under accepted family law principles, the evidence about his earnings level at the time of the ruling was only part of the overall required guidelines calculation under sections 4055 and 4058, and the court disregarded the terms of the stipulated child support order and judgment, by ignoring Father's assets that formed the basis of the monthly amount, and thus it improperly failed to permit relevant evidence to be adduced on the main alleged change of circumstances before the court. The stipulated judgment was grounded in the substantial assets that Father owned, that were identified as supporting the fulfillment of his support payment obligation, without any need for his work income. The SJP anticipated that no such disclosure of Father's substantial assets would ever be necessary, because of the stipulation.

20

When a litigant requests a continuance, last minute or otherwise, the court should take into consideration the degree of diligence in his or her efforts to bring the case to trial or hearing, including participating in earlier court hearings, conducting discovery, and preparing for trial. (*Oliveros v. County of Los Angeles, supra*, 120 Cal.App.4th 1389, 1396.) When a court decides whether to grant a continuance or extend discovery, its decision must be directed toward achieving substantial justice, by deciding whether " 'the strong public policy favoring disposition on the merits outweighs the competing policy favoring judicial efficiency.' " (*Ibid*.)

Moreover, admissible evidence of materially changed circumstances is required " 'as a necessary predicate' " for modification. (*Williams, supra*, 150 Cal.App.4th 1221, 1234.) The court had to adhere to the principles set forth in section 4053 that each parent should support the child according to his or her ability, and imputation of income, even from assets, is permitted where necessary to promote the child's best interests. (§ 4058, subd. (b); *De Guigne*, *supra*, 97 Cal.App.4th at pp. 1359, 1363.) This record supports an inference that Father may have been using family members and employees to hold title to assets on his behalf, and this may have prevented Mother from acquiring relevant asset information. (*In re Marriage of Hoffmeister, supra*, 161 Cal.App.3d 1163, 1170-1171.)

Although Father was normally a high earner, who had changed positions within the Mexican governmental legal system and was employed at the time of the hearings (on temporary disability), he could not, without a more complete showing about his net worth, repudiate his prior agreements that a particularly strong showing of a change of circumstances would be needed to modify child support, and that his earnings were

21

deemed not to be essential to the payment of the agreed amount. This strong showing was not made here. To the extent that Father was relying on his claimed disability and reduced monthly income, the court failed to take into account what length this work restriction would have, and whether it was a material factor that made any difference in light of the assets he previously possessed. Additionally, in ruling on Father's modification requests and stating it was a temporary order, the court erroneously placed the burden on Mother to bring another motion to modify later.

It was accordingly an abuse of discretion for the family court to discount Mother's testimony about the extent of her knowledge or lack of knowledge with regard to those referenced, existing assets, in light of its previous rulings that had denied her requests for a continuance to obtain such documentation. Although more discovery could have been sought earlier by Mother's counsel, even before Father's I&E declaration was provided, that is not a reasonable requirement here. When Father's unsuccessful motion to set aside was filed in November 2010, he did not provide an I&E declaration, and his admissions about his possession of extensive assets remained in place. Mother subsequently presented an adequate showing that she needed to and might be able to obtain more documentation about the assets, and that she had not done so previously because she was not put on adequate notice until the filing of Father's April 2011 I&E declaration that he apparently had divested himself of such assets. Mother's continuance requests were at least reasonably timely, in light of the court's decision to schedule several days of trial to address the financial issues, after the motion to set aside the SJP was denied.

22

On this record, the trial court abused its discretion in denying Mother's request for continuance to conduct discovery about the value of Father's assets, because the evidence provided about Father's current earnings and work disability was not sufficient, without more, to make an appropriate "law-imposed" support calculation under section 3585.

IV

*TERMS OF SJP: DURATION OF SUPPORT; EDUCATIONAL EXPENSES*

Mother next contends the family court misinterpreted the SJP, or abused its discretion, or exceeded its jurisdiction, in granting the motion to modify and decrease Father's support obligation, regarding (1) support until age 21 (reduced to 18 or graduation from high school); (2) payment of all college expenses (only 1/2 payable) and (3) private high school or postcollege schooling (none payable).

As outlined above, the family court denied Father's motion to set aside the entire SJP, and it proceeded to hear the remaining financial issues, and interpreted the parties' SJP on child support after age 18, and on educational expenses. Section 3587 provides authorization for the court to approve a "stipulated agreement by the parents to pay for the support of an adult child or for the continuation of child support after a child attains the age of 18 years and to make a support order to effectuate the agreement." However, the power of the court to set aside such a stipulated agreement, that was confirmed by a judgment, is not expressly provided for in the statutes. Father is essentially seeking to collaterally attack those provisions of the stipulated judgment, but in the guise of modifying such contractual terms. (See *In re Marriage of Stanton, supra*, 190 Cal.App.4th at p. 554.)

23

"A support order based on the parties' stipulated agreement to pay for the support of an adult child is enforceable by contempt, even though there is no applicable statutory support obligation apart from the stipulation.  Having been approved by the court and entered as a court order, the obligation is deemed law-imposed (not a 'debt'). [Citations.]"  (Family Law, *supra,* ¶ 18:120, p. 18-37.)

We are required to interpret independently the questions of law presented by the statutorily authorized support agreement, as it was incorporated into the judgment, including its provisions on changed circumstances.  Such agreements are construed utilizing the general rules governing the interpretations of contracts.  (*In re Marriage of Iberti*, *supra*, 55 Cal.App.4th 1434, 1439.)  We give effect to the evident mutual intention of the parties, and " '[i]f contractual language is clear and explicit, it governs.' "  (*People v. Shelton* (2006) 37 Cal.4th 759, 767; *Davis*, *supra*, 120 Cal.App.4th at p. 1018; *E.M.M.I. Inc. v. Zurich American Ins. Co.* (2004) 32 Cal.4th 465, 470.)

First, with regard to the duration of the support obligation, section 3901, subdivision (b) provides that a parent's ability to agree to provide additional support, past age 18 or until the completion of high school, is not limited by this section, and the court retains the power to inquire whether an agreement to provide additional support has been made.  Such an agreement for child support is deemed to be separate from all other provisions of the agreement, and "[a]n order for child support based on the agreement shall be law-imposed and shall be made under the power of the court to order child support."  (§ 3585.)  Since there was no marriage here, there are no other severable,

24

relevant property or spousal support provisions. This child was born in 2006, and only the issues litigated at these hearings in 2011 are now before us.

All of the child support provisions in the stipulated judgment are premised upon Father's statement in it that he would not provide an I&E declaration, but instead represented that he will have sufficient assets and income to pay all of the expenses and support provided for in the agreement, and any current or future employment was not necessary for him to meet those obligations. Father further agreed that he would not request a downward modification of child support, "absent a very strong and specific showing of changed circumstances." His I&E declarations omitted any information about real property or business assets, such as Mother's testimony indicated that he had previously owned at various times, and she had some basis in her personal knowledge to make those claims. As discussed above, more information about his assets was potentially available and necessary for the court to make an informed exercise of discretion.

Likewise, although the stipulated judgment provides that Father shall pay all of the child's college expenses, the court reduced that by half, and omitted the private high school and postcollege schooling expense entirely. The court stated its personal views that the public schools in Chula Vista were very good and Mother's two other children seemed to be doing well there. However, the parties had previously set forth their agreement that their child should attend private high school and that Father would pay additional child support consisting of the child's clothing expenses, including shoes and any school uniforms, without regard to the amount of his monthly income. On this

25

record, the court did not have an adequate basis to disregard and vacate those portions of the judicially confirmed agreement.

When counsel for Mother pointed out that these rulings were a total departure from the parties' agreement, the court stated as justification, "I think this is more fair than what was in the agreement, to be honest with you. I think this is what is normally done in every family law case. The 21-year age was totally different from -- in my short period of being in family law and in talking to other people, and I'm going to go back to what is normally done on Family Code section 3901." However, this record does not show that a "very strong and specific showing of changed circumstances," as required by the stipulated agreement, and by case law, was made at these hearings. The family court was not authorized, in these modification proceedings, to disregard the language of the agreement by stating that it was more customary to end child support at age 18. The parties had statutory authorization under section 3585 et seq. to agree otherwise on the duration and nature of child support, and they did so. Father failed to show adequate or material grounds to modify those obligations, with regard to providing child support up until age 21 and the agreed-upon educational expenses.

We need not discuss Mother's additional arguments about abuse of discretion, and express no opinion on whether Father can show the relevant material change of circumstances at a later time. The reversal is an open reversal, except as specified above (the unchallenged denial of Father's motion to set aside the stipulated judgment).

26

DISPOSITION

The order modifying the stipulated judgment is reversed.  Appellant is to recover all costs on appeal.


HUFFMAN, J.

WE CONCUR:


McCONNELL, P. J.


McDONALD, J.