Filed 4/11/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LENORE DRESCHER, | B246494 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BD328732) |
| v. | |
| MARK P. GROSS, | |
| Defendant and Respondent. | |

APPEAL from a post-judgment order of the Superior Court of Los Angeles County, Bruce G. Iwasaki, Judge.  Reversed with directions.

Drescher Law Firm, Robert E. Drescher; Law Offices of Herb Fox and Herb Fox for Plaintiff and Appellant.

Brot & Gross, Ronald F. Brot, Marie A. Lamolinara; Barbakow & Ribet and Claudia Ribet for Defendant and Respondent.

_____

**INTRODUCTION**

With the dissolution of their marriage in 2001, Lenore Drescher and Mark Gross executed a marital settlement agreement wherein they stipulated to equally pay for the future college expenses of their three minor children.  The agreement was incorporated into the judgment of dissolution and child support and spousal support were ordered as set forth in the agreement.

Eleven years later their daughter enrolled in the University of Missouri and began incurring significant expenses.  Drescher sought a modification of the judgment, asserting she had become permanently disabled with an income of less than $23,000 a year, while Gross's income had increased to over $400,000.  The trial court denied Drescher's request for modification, concluding it lacked jurisdiction to modify the judgment with respect to college expenses because the marital settlement agreement did not refer to the obligation as "child support."  Drescher appeals from this order.

In this appeal, we must decide whether parents may contractually limit the court's jurisdiction to modify an adult child support order made pursuant to the parents' agreement under Family Code[1] section 3587.  We conclude parents may do so. In contrast to the court's broad jurisdiction to order minor child support, which is rooted in parents' law-imposed duty to support their children until adulthood, the court's jurisdiction to order adult child support under section 3587 derives entirely from the parents' agreement to pay adult support, and the statute grants the court limited authority to "make a support order to effectuate the agreement."  Consistent with this grant of limited authority, in section 3651, the Legislature expressly made the court's general authority to modify a support order "subject to" section 3587.  Interpreting the statutes together within the broader statutory framework, we conclude, as a matter of first impression, that the "subject to" clause in section 3651 means an order for adult child support, when authorized exclusively by the parents' agreement under section 3587, may

---

[1]  All statutory references are to the Family Code unless otherwise specified.

be made non-modifiable by the parents' express and specific agreement to restrict the court's jurisdiction.

Though we hold parents may contract to restrict the court's jurisdiction to modify an adult child support order in this limited circumstance, we conclude the parties' marital settlement agreement in this case did not limit the court's jurisdiction. Accordingly, we reverse the order and remand the matter to the trial court with directions to consider whether the college expense support obligation should be modified.

### FACTS AND PROCEDURAL BACKGROUND

1. *The Marital Settlement Agreement and Judgment*

Drescher and Gross were married in 1987 and separated in 2001. There are three children from the marriage: Joshua, born in 1992; Lila, born in 1994; and Noah, born in 1997.

In June 2001, the parties executed a Marital Settlement Agreement (MSA). At the time, the parties were both employed as attorneys earning six-figure incomes.

The parties' financial support obligations are set forth in Paragraph IV of the MSA, under the heading "FAMILY SUPPORT," and the specific obligations are detailed in subparagraphs A through D. The MSA refers to the financial obligations set forth in subparagraph A as "non-modifiable, non-taxable family support," while the obligations set forth in subparagraphs B and C are referred to as "additional child support." Subparagraph D, the most pertinent to this appeal, does not contain a similar specific reference to "family support" or "child support." Subparagraph D provides:

> "D. Each party shall be responsible for payment of one-half ($\frac{1}{2}$) of all costs incurred on behalf of each minor child, for undergraduate California state college or university expenses, trade or other school or schools' costs incurred by such minor child, or other schools approved by the parties, so long as such minor child is continuing to reasonably matriculate at such school. Costs for such undergraduate college or trade or other school or schools shall be defined as all tuition, fees, room, board, supplies, books, transportation costs, reasonable living expenses."

3

In October 2002, the final judgment of dissolution was entered. The judgment incorporates the MSA and orders child custody, spousal support and child support as set forth therein. Pursuant to the terms of the MSA, the judgment awarded Drescher and Gross joint legal and physical custody of the children.

2. *November 2011 Order Modifying Child Support and Enforcing College Expense Obligation*

In August 2011, Gross filed an order to show cause requesting modification of child support, citing the significantly reduced timeshare between Drescher and the parties' daughter, Lila, as a material change in circumstances warranting modification. The order to show cause also asked the court to enforce the college expense provision of the MSA, as incorporated into the judgment. Specifically, Gross sought an order requiring Drescher to pay half of what it would cost for Lila to attend college in California, regardless of whether Lila ultimately enrolled in an in-state or out-of-state school.

In response, Drescher argued any modification in child support should take into account the vast disparity in the parties' incomes that had developed over the past 10 years. She presented evidence showing that, in 2004 and 2006, she was diagnosed with various ailments rendering her permanently disabled and unable to work in any capacity. She asserted her State Bar membership became inactive in 2006 and she was supporting herself on disability payments and child support. During the same period she claimed Gross's income had increased to over $400,000 a year.

As for the college expense provision, Drescher argued she could not be compelled to pay for Lila to attend an out-of-state school because the provision was limited, by its terms, to costs incurred for undergraduate California state college or university expenses.

In November 2011, the trial court entered an order modifying the child support Gross paid for Lila's and Noah's maintenance. With respect to the parties' incomes, the court found Drescher was disabled, unable to work, and received an annual income of $22,908, while Gross earned approximately $421,000 per year.

4

The court also granted Gross's request to enforce the college expense provision of the judgment, and ordered the parties to "meet and confer annually in advance of the Fall Semester to determine the maximum cost of a California college or university, trade or other school." Commencing in 2012, the order required each party to pay on behalf of Lila one-half of the maximum annual cost of a California college, university, trade or other school, regardless of whether Lila attended a California or non-California school.

3. *Order Denying Modification of College Expense Obligation*

In June 2012, Drescher filed an order to show cause requesting modification of the college expense provision of the judgment. Drescher asserted her disability and the resulting change in the parties' relative incomes since the judgment was entered constituted a material change in circumstances. Her order to show cause asked the court to reallocate 91 percent of the shared support obligation to Gross, and 9 percent to Drescher, based on the disparity in their current incomes.

Gross opposed the request, arguing the court had no authority to modify the provision because college expenses are not child support, and the parties' stipulation to pay their children's college expenses was entirely contractual. He also argued Drescher had failed to establish a change in circumstances since the court had last modified child support in November 2011. While Drescher's request for modification was pending, Gross brought a competing order to show cause seeking payment from Drescher of approximately $8,800 for her share of tuition and living expenses incurred through September 2012 on behalf of Lila, who was now attending the University of Missouri.

On November 12, 2013, the trial court denied Drescher's request to modify the judgment and granted Gross's request for reimbursement of college expenses incurred on Lila's behalf. With respect to modification, the court concluded, as a matter of contract interpretation, that it lacked jurisdiction to modify because the parties had not intended the college expense provision to be treated as child support. The court reasoned that nothing in the language of the MSA indicated the parties intended "shared expenses for adult children to be treated as equivalent to statutorily mandated child support," citing the fact that "[t]he MSA specifically identified certain items as child support, but [the college

5

expense provision] is not among them." Because Drescher had not presented extrinsic evidence of the parties' intent, the trial court concluded the language of the MSA controlled and it lacked jurisdiction to modify the provision. The court also concluded Drescher had failed to establish a change in circumstances. Drescher appealed.

## DISCUSSION

1. *Jurisdiction to Modify Judgment*

    a. *Standard of review*

Drescher contends the trial court erred in concluding it lacked jurisdiction to modify the college expense provision of the judgment. We review the trial court's determination to grant or deny a modification of a support order for an abuse of discretion. (*Edwards v. Edwards* (2008) 162 Cal.App.4th 136, 141.) However, questions concerning the interpretation of statutes are matters of law for the reviewing court. (*Ibid.*) Likewise, "the interpretation of a contract or other written instrument is a question of law if there is no extrinsic evidence thereon or if the evidence is without conflict and is not susceptible of conflicting inferences." (*Lucas v. Elliott* (1992) 3 Cal.App.4th 888, 892 (*Lucas*).) So too, "[t]he question of the trial court's jurisdiction is a pure question of law subject to our independent review." (*Thompson Pacific Construction, Inc. v. City of Sunnyvale* (2007) 155 Cal.App.4th 525, 537.) "A trial court's failure to exercise discretion is itself an abuse of discretion, and we review such action in accordance with that standard of review." (*In re Marriage of Gray* (2007) 155 Cal.App.4th 504, 515.)

    b. *Parents may restrict the court's jurisdiction to modify adult child support when the authority to order support is based exclusively on the parents' contract*

We begin with Drescher's contention that an agreement to pay an adult child's college expenses is modifiable as a matter of law, regardless of whether the parents contract to restrict the court's jurisdiction.

6

Section 3900 recognizes the equal duty of parents to "support their child in the manner suitable to the child's circumstances." (See also § 4053, subds. (a) & (b).) " 'Support,' " when used with reference to a minor child, refers to "a support obligation owing on behalf of a child," and includes the obligation to pay for the child's "maintenance and education." (§ 150.) Additionally, among the expenses the court may order parents to pay as "additional child support" are "[c]osts related to the educational or other special needs of the children." (§ 4062, subd. (b)(1).)

The duration of the parents' child support obligation normally continues until an unmarried child "completes the 12th grade or attains the age of 19 years, whichever occurs first." (§3901, subd. (a).) However, "[n]othing in [section 3901] limits a parent's ability to agree to provide additional support . . . ." (§ 3901, subd. (b).) Consistent with this qualification, section 3587 authorizes the court to order adult child support, as follows: "Notwithstanding any other provision of law, the court has the authority to approve a stipulated agreement by the parents to pay for the support of an adult child or for the continuation of child support after a child attains the age of 18 years and to make a support order to effectuate the agreement." And, consistent with this authority, section 58 defines " 'Child for whom support may be ordered' " as "a minor child and a child for whom support is authorized under Section 3587 . . . ." (§ 58.)

Section 3651 states the general rule for modification or termination of support orders, "whether or not the support order is based upon an agreement between the parties." (§ 3651, subd. (e); *In re Marriage of Alter* (2009) 171 Cal.App.4th 718, 726 (*Alter*).) Subject to other provisions of the Family Code—including section 3587, as we will discuss—section 3651 authorizes prospective modification of all child support orders, even those based upon the parents' agreement. (*Alter*, at p. 727.) In turn, section 3585 states that "provisions of an agreement between the parents for child support shall be deemed to be separate and severable from all other provisions," and "[a]n order for child support based on the agreement shall be law-imposed and shall be made under the power of the court to order child support." Thus, with respect to support for a minor child, our Supreme Court has held, "[w]hen a child support agreement is incorporated in

7

a child support order, the obligation created is deemed court-imposed rather than contractual, and the order is subsequently modifiable despite the agreement's language to the contrary." (*Armstrong v. Armstrong* (1976) 15 Cal.3d 942, 947; see also *In re Marriage of Bodo* (2011) 198 Cal.App.4th 373, 386.)

Based on the court's general authority to modify support orders under section 3651 and the Supreme Court's holding in *Armstrong*, Drescher contends an agreement concerning child support is always modifiable, even if the parents contract to restrict the court's jurisdiction. While this undoubtedly is true with respect to support ordered for a minor child, the language of section 3651, and the limited authority granted by section 3587, suggests a different rule applies to orders for adult child support that are authorized exclusively to "effectuate" the parents' agreement under section 3587.

Section 3651, subdivision (a) states the court's authority to modify or terminate a support order is "*subject to* . . . [section] 3587."[2] (Italics added.) No appellate authority has yet considered the effect of the clause making the general power to modify a support order "subject to" section 3587; however, one commentator has suggested the language means parents have the contractual power to limit the court's jurisdiction to modify adult support orders authorized by section 3587. (See Minerich, *Support for Adult Children: Is it Modifiable?* (May 2005) Orange County Law, at p. 61.) We agree with this interpretation.

Unlike the authority to order support for a minor child, which derives from the parents' law-imposed duty to support children until adulthood under sections 3900 and 3901, or the authority to order support for an incapacitated adult child, which derives from the parents' law-imposed duty to "maintain . . . a child of whatever age who is incapacitated from earning a living and without sufficient means" under section 3910, the court's authority to order adult child support under section 3587 derives entirely from the

---

[2]     Section 3651, subdivision (a) provides: "Except as provided in subdivisions (c) and (d) and subject to Article 3 (commencing with Section 3680) and Sections 3552, 3587, and 4004, a support order may be modified or terminated at any time as the court determines to be necessary."

parents' agreement to pay such support. Because the court's authority is rooted in the parents' contractual agreement, it follows that the parents' agreement also may restrict the court's authority to modify an order for adult child support made under section 3587. Construing the "subject to" clause in section 3651 to limit the court's authority to modify an adult child support order where the parents have expressly contracted for such a restriction is consistent with the limited grant of jurisdiction under section 3587, which authorizes the court to order adult child support to "effectuate the [parents'] agreement."

Moreover, this interpretation also gives effect to the "[n]otwithstanding any other provision of law" clause that prefaces section 3587. (See Minerich, *supra,* 47-May Orange County Law. at p. 61.) That is, as we interpret the relationship of the various statutes, where the parents' agreement provides for adult child support that cannot be modified, section 3587 authorizes the court to make a non-modifiable "support order to effectuate the agreement." And this is so *notwithstanding* sections 3585 and 3651, which otherwise treat child support provisions of an agreement as "severable," and the resulting order as "law-imposed," such that it remains subject to the court's continuing jurisdiction to modify.

Accordingly, we conclude that while section 3651 generally authorizes the court to modify a child support order, including adult child support ordered pursuant to the parents' agreement, this authority is "subject to," and may be limited by, the parents' express agreement to restrict modification of adult child support ordered pursuant to section 3587. We turn now to the trial court's construction of the MSA.

c. *The MSA does not expressly restrict the court's jurisdiction to modify the college expense support order; the trial court's failure to consider modification was an abuse of discretion*

In concluding it lacked jurisdiction to modify the college expense provision, the trial court framed the issue as "fundamentally a question of contract interpretation." Because the "MSA specifically identified certain items as child support," but the provision concerning college expenses was "not among them," the court reasoned that "[n]othing in the language of the MSA indicates that the parties intended that voluntarily

9

undertaken shared expenses for adult children be treated as equivalent to statutorily mandated child support, or that the equal obligation could later be altered other than by mutual consent."

Though we agree this is a question of contract interpretation, we disagree with the trial court's construction of the MSA. As noted, because no extrinsic evidence was considered, we are not bound by the trial court's construction and interpret the terms of the MSA de novo. (*Lucas, supra,* 3 Cal.App.4th at p. 892.)

The trial court's construction was based entirely on an inference drawn from an omission. Because the parents referred to some support obligations as "child support," but not the provision concerning college expenses, the court inferred the parents must not have intended the resulting order to be modifiable. Though there is some logic to this reasoning, we find the statutory scheme requires a more explicit statement of intent to restrict the court's jurisdiction where matters of support are concerned.

As with adult child support ordered pursuant to section 3587, which we have concluded can be made non-modifiable to effectuate the parents' agreement, parties are similarly permitted to contractually restrict the court's jurisdiction to modify spousal support. However, to do so, section 3651, subdivision (d) requires a written or oral agreement made in open court that "*specifically provides* that the spousal support is not subject to modification or termination." (Italics added.) We conclude the same rule should apply in the context of adult child support orders. Parties may restrict the court's jurisdiction to modify, but to do so, they must expressly and specifically state in their agreement that any resulting adult child support order made under section 3587 will not be subject to modification or termination by the court. In this case, the absence of an

10

express and specific statement in the MSA is alone sufficient to conclude the trial court had jurisdiction to modify the adult child support order pertaining to college expenses.[3]

Nevertheless, apart from the lack of an express agreement restricting modification, we find other problems with the inference drawn by the trial court. To begin, the parties' use of the terms "family support" and "child support" in the MSA is hardly dispositive. Though it is true the college expense provision was not designated as "additional child support," the provision was included under the section defining the parties' "FAMILY SUPPORT" obligations. Section 92 defines " 'Family support' " as "an agreement between the parents, or an order or judgment, that combines *child support* and spousal support . . . ." (Italics added.) It follows that by including the stipulation to pay each child's college expenses within the section of the MSA setting forth the parties' respective family support obligations, the parties intended the resulting judgment to incorporate the college expense obligation in a child support order.

Moreover, though the MSA may not specifically refer to college expenses as "child support," the obligation it describes constitutes child support under the law. The subject provision obligates each parent to pay one-half of all costs incurred on behalf of "each minor child" for undergraduate college expenses, trade or other school costs incurred by such minor child, as well as other "reasonable living expenses." As noted, " 'Support' " when used with reference to a minor child is defined to include the

---

[3]     Gross's reliance on *In re Marriage of Smith & Maescher* (1993) 21 Cal.App.4th 100 (*Smith*) is misplaced. In *Smith*, the mother brought her claim for reimbursement of college expenses gratuitously loaned to her son as a contract action and, on appeal, "[t]he parties agree[d] the separation agreement made [the child] an intended third party beneficiary as to college expenses." (*Id.* at p. 105.) Thus, the appellate court identified the "pivotal issue in this dispute [as] whether [the mother] may maintain a damage action for breach of the third party beneficiary contract," and did not consider whether the agreement created a child support obligation, subject to the court's general jurisdiction to modify under section 3651. (*Smith,* at p. 105.) Indeed, because the marital separation agreement in *Smith* was governed by Massachusetts law and incorporated into a Massachusetts judgment, the court relied "particularly [on] generally accepted contract principles and Massachusetts case law," without analyzing the statutory framework that governs our decision here. (*Id.* at p. 106.)

obligation to provide for the child's "maintenance and education" (§ 150), and the court may order parents to pay as "additional child support" "[c]osts related to the educational or other special needs of the children" (§ 4062, subd. (b)(1)). Though the parties agreed the obligation would persist "so long as such minor child is continuing to reasonably matriculate at such school"—thus, presumably, beyond age 18 and into adulthood—the obligation described, by its terms, fits squarely within the Family Code's definition of child support.

We conclude the parties' stipulation to pay each minor child's college expenses resulted in a child support order when incorporated into the court's judgment. Though based on an agreement to pay adult child support, the resulting order was subject to the court's jurisdiction to modify, absent an express and specific agreement by the parties to the contrary. Because the MSA does not expressly restrict the court's authority to modify the college expense support order, the trial court erred in concluding it lacked jurisdiction. The court's failure to consider whether the support order should be modified was an abuse of discretion.

2. *Material Change in Circumstances*

Notwithstanding our conclusion concerning the court's jurisdiction to modify the college support order, Gross contends the judgment should nevertheless be affirmed because Drescher failed to establish a material change in circumstances since the last order modifying child support in November 2011. We disagree.

" 'As a general rule, courts will not revise a child support order unless there has been a "*material change of circumstances.*" . . . .' " (*In re Marriage of Stanton* (2010) 190 Cal.App.4th 547, 553 (*Stanton*).) "[T]he reason for the change of circumstances rule is to preclude relitigation of the same facts" and to bring finality to determinations concerning financial support. (*In re Marriage of Baker* (1992) 3 Cal.App.4th 491, 501; *Stanton*, at pp. 553-554.) "Without a changed circumstances rule, ' "dissolution cases would have no finality and unhappy former spouses could bring repeated actions for modification with no burden of showing a justification to change the order. Litigants ' "are entitled to attempt, with some degree of certainty, to reorder their finances and life

12

style [*sic*] in reliance upon the finality of the decree." ' [Citations.] Absent a change of circumstances, a motion for modification is nothing more than an impermissible collateral attack on a prior final order." ' " (*Stanton,* at pp. 553-554.)

Because a request to modify the college expense support allocation was not before the trial court when it made its November 2011 order, the underlying rationale for the change of circumstances rule is not implicated here. Though the November 2011 order modified Gross's child support obligation for Lila and Noah based on a change in the parties' timeshare for Lila and a change in their respective incomes, with respect to college expenses, the order was limited to granting Gross's request to enforce the obligation, regardless of whether Lila attended a California or out-of-state school. The trial court did not consider whether the allocation of college expenses to each parent should be modified in light of the disparity in their respective incomes or other assets that each might have to pay the children's college expenses. Indeed, when Drescher's counsel raised modification, the trial court questioned whether that relief had been requested in Drescher's papers, and Gross's counsel argued it would be a violation of due process for the court to consider the issue without a "cognizable request to modify." Because the November 2011 order did not determine whether modification was appropriate, Drescher's subsequent request for modification cannot be regarded as a collateral attack on a prior final order. (See *Stanton, supra,* 190 Cal.App.4th at p. 554.)

## DISPOSITION

The order is reversed. On remand, the trial court is directed to consider whether the allocation of the college expense support obligation should be modified in light of the parties' respective incomes, other assets they may have to satisfy the support obligation, and any other relevant evidence the court may consider in exercise of its discretion. Drescher is entitled to costs on appeal.

**CERTIFIED FOR PUBLICATION**

KITCHING, J.

We concur:

CROSKEY, Acting P. J.

ALDRICH, J.

14