Filed 8/12/15  In re Haylee G. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re HAYLEE G. et al., <br><br> Persons Coming Under the Juvenile Court Law. | B262771 <br><br> (Los Angeles County <br> Super. Ct. No. CK96805) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br>    Plaintiff and Respondent, <br><br>    v. <br><br> IRIS B., <br><br>    Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Debra Losnick, Juvenile Court Referee.  Reversed and vacated with directions.

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

_____

Iris B. (Mother) appeals from the order denying her petition for a change of order (Welf. & Inst. Code,[1] § 388) and from the order terminating her parental rights over her children Haylee G. and Adrian G. (§ 366.26). She contends that the juvenile court abused its discretion in summarily denying her section 388 petition without a hearing and that the parent-child beneficial relationship exception precluded termination of her parental rights. We reverse the order summarily denying the section 388 petition, and vacate the order terminating Mother's parental rights.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Dependency Proceedings Are Instituted on Behalf of Haylee*

The Los Angeles County Department of Children and Family Services (DCFS) took 15-month-old Haylee into protective custody on November 30, 2012 after the juvenile court ordered her removal from Mother and Y.G.[2] (Father), who repeatedly engaged in domestic violence in the presence of Haylee. Both parents had a criminal history and used drugs. Mother also had a history of alcohol abuse.

On December 5, 2012, DCFS filed a petition alleging that Haylee came within the jurisdiction of the juvenile court under section 300, subdivision (a) (serious physical harm), and subdivision (b) (failure to protect), because of her parents' ongoing domestic violence. The juvenile court ordered Haylee detained, ordered DCFS to provide Haylee and her parents with family reunification services, and ordered parents to have separate monitored visits.

---

[1] All statutory references are to the Welfare and Institutions Code.

[2] Father is sometimes referred to as "[J.] G." in the appellate record. Because Father did not appeal from the juvenile court's order terminating his parental rights, we restrict our statement of facts to those necessary for an understanding and resolution of Mother's contentions.

**B. *Haylee's Jurisdiction and Disposition Hearings***

On January 16, 2013, the juvenile court conducted Haylee's adjudication hearing. The court sustained the petition as amended by interlineation, finding true by a preponderance of the evidence that the parents had a history of engaging in domestic altercations in the presence of Haylee, that Father bit Mother's hand on September 27, 2012 causing it to bleed while Mother held Haylee, the parents had struck each other on prior occasions, and Mother failed to protect Haylee by allowing Father to live in Haylee's home.

The juvenile court immediately proceeded to disposition. It declared Haylee a dependent child under subdivisions (a) and (b) of section 300, removed her from the custody of her parents and ordered DCFS to provide the family with reunification services. The court ordered Mother to participate in individual counseling to address case issues, parenting classes, a domestic abuse support group for victims, random weekly alcohol and drug testing, and a full drug rehabilitation program with random drug testing if any drug test was missed or positive.

**C. *DCFS Institutes Dependency Proceedings on Behalf of Adrian*[3]**

At 3:00 a.m. on June 21, 2013, Los Angeles Police Officer Ramirez and his partner went to the Bonaventure Hotel in downtown Los Angeles in response to a 911 call from a hotel security guard who reported that Mother and Father were arguing in the presence of a newborn baby.

Mother told Officer Ramirez that she and Father were just arguing; she denied engaging in domestic violence. When the officer asked Mother about the newborn, Mother said they had just been released from the hospital. Officer Ramirez expressed concern that the newborn was out so late. While the officer initially planned to take Mother and Adrian to the maternal grandmother's home or the Union Mission homeless

---

[3]     Adrian's name is improperly spelled "Adrianne" in various documents in the record on appeal.

3

shelter, he decided to contact DCFS to assess the situation. The officer apprised Mother that DCFS would be responding and that she was not permitted to leave the police station before someone from DCFS arrived.

The social worker saw Mother holding Adrian in the lobby of the police station and introduced herself. Mother showed the social worker the juvenile court's orders pertaining to her family reunification case plan. Mother denied that Adrian was abused or neglected and explained that she had delivered Adrian three days earlier and had just been discharged from the hospital.

The social worker observed an open sore on Mother's knuckle and a small bruise on the underside of her forearm. When the social worker asked Mother how she sustained her injuries, Mother claimed she had a verbal argument with Father but later admitted that he caused the bruises on her hand and arm. Mother denied that she was holding Adrian during the physical altercation. She also claimed that she had a restraining order against Father. After the police checked the status of the restraining order, Mother admitted that she never served Father with the restraining order. She also admitted that she lied to the police about her argument with Father because she did not want Adrian to be taken away from her.

In light of the parents' ongoing domestic violence, Mother's untruthfulness to law enforcement, and her lack of permanent housing, the social worker determined that Adrian was at risk of harm. The social worker advised Mother that she was going to detain Adrian. When asked for Father's contact information, Mother declined to provide it.

On June 26, 2013, DCFS filed a section 300 petition on Adrian's behalf, alleging that he came within the jurisdiction of the juvenile court pursuant to subdivisions (a), (b) and (j) of section 300. More specifically, the petition re-alleged the allegations in Haylee's petition and added the allegation that the parents' domestic violence placed Adrian at risk of harm. The court ordered Adrian detained the same day, ordered family reunification services for both parents, and directed DCFS to evaluate the maternal aunt's

4

home for possible placement. The court ordered monitored visits for Mother three times per week. Adrian's adjudication hearing was set for September 3, 2013.

## D. *Haylee's Six-month Review Hearing*

In a report prepared for Haylee's six-month review hearing scheduled for July 9, 2013, DCFS reported that Haylee had been placed with her maternal grandmother on June 3, 2013 and was doing well. During this period of supervision, DCFS only spoke with the parents in person once on June 3, 2013. Both parents were homeless and were staying in shelters. Father stated he missed Mother and wanted to be in a relationship with her. Neither provided the social worker with contact information or proof of enrollment in, or completion of, court-ordered services and programs. Both parents stated they needed additional time to complete the ordered programs and services. The parents had separate weekly visits with Haylee. The monitor did not report any problems or concerns.

At the hearing, the juvenile court found that neither Mother nor Father was in compliance with the case plan, and it ordered family reunification services to continue for both parents. Haylee's 12-month review hearing was scheduled for December 10, 2013.

## E. *Adrian's Jurisdiction/Disposition Hearing*

In anticipation of Adrian's jurisdiction and disposition hearings, DCFS reported that Adrian had been placed in the home of his maternal aunt. Mother visited Adrian two or three times a week in the maternal aunt's home. Mother was attentive to Adrian during her visit. DCFS later placed Adrian with his maternal grandmother.

The juvenile court held Adrian's jurisdiction and disposition hearings on September 3, 2013. Neither parent was present. The court sustained all the allegations of the petition and found Adrian to be a person described by subdivisions (a), (b) and (j) of section 300. The court then removed Adrian from the custody of his parents and ordered family reunification services for both parents. The court ordered Mother to participate in a domestic violence program, including a group for victims, a parenting program and

5

individual counseling to address case issues. The court also ordered Mother to submit to random or on demand drug testing. If Mother missed a test or tested dirty, she would be required to enroll in a full drug rehabilitation program with random drug testing. Mother also was granted monitored visits with Adrian.

## F. *Haylee's 12-month Review Hearing and Adrian's Six-month Review Hearing*

In the 12-month status review report, DCFS reported that Haylee was thriving in the home of her maternal grandmother. Haylee appeared to be very attached to her grandmother. DCFS further reported that the maternal grandmother met Haylee's emotional, physical and medical needs.

The maternal grandmother voiced her concerns about monitoring Mother's visits with Haylee. Mother verbally abused, intimidated and physically attacked the maternal grandmother to the point she had to call the police. Maternal grandmother also stated that Mother came to the house under the influence of drugs and alcohol. The social worker changed the location of Mother's visits to the DCFS office.

During this period of supervision, Father stated that Mother texted him and threatened to kill him. Father said he did not want to get back together with Mother and was in a new relationship. He only responded to Mother's texts because she sent them. The social worker told Father that he and Mother were both at fault and that they needed to stop sending each other harassing text messages.

When the social worker met with Mother, Mother told her that Father had been sending her threatening text messages and pictures of his new girlfriend. Mother showed the text messages to the social worker, who advised Mother that she and Father were at fault. Mother acknowledged that she needed to stop her behavior and would obtain a restraining order.

Although Mother produced nine negative drug tests, she missed seven tests.

On March 4, 2014, the juvenile court found both parents to be in partial compliance with their case plans and continued their reunification services for another six months.

**G.** *Court Terminates Family Reunification Services at Haylee's 18-month Review Hearing and Adrian's 12-month Review Hearing*

On September 2, 2014, the juvenile court held a contested 18-month review hearing for Haylee and a 12-month review hearing for Adrian. The reports prepared prior to this hearing disclosed that Mother and Father continued to send each other threatening and harassing messages. Although Mother had completed some services, she missed numerous drug tests and had tested positive for cannabis.

The juvenile court terminated the parents' family reunification services as to both children and scheduled a selection and implementation hearing.

**H.** *Mother Files a Section 388 Petition Seeking Reinstitution of Services*

On February 27, 2015, Mother filed a section 388 petition, asking the juvenile court to reinstate her family reunification services. Mother stated that since the court entered its September 2, 2014 order terminating her family reunification services and setting a section 366.26 hearing, she "has been participating in a comprehensive drug and alcohol treatment program that includes drug and alcohol testing and anger management classes." In addition, Mother "completed a parenting program." She maintained that the requested change of order would benefit her children because she "has demonstrated a commitment to living a sober lifestyle. The children will have the benefit of mother's improved insight and ability to parent the children. With the continued support of their maternal grandmother, there is a substantial probability that the children will be returned to their mother's custody."

Attached to Mother's section 388 petition was a letter dated January 15, 2015, from the program manager at Impact Drug and Alcohol Treatment Center. The manager stated that Mother was admitted into the treatment center on August 29, 2014 and was expected to complete treatment on February 24, 2015. Since being admitted, Mother "completed parenting classes, anger management, and other various groups that are conducive to ongoing recovery." Although Mother struggled at first, she "has made major improvements in her attitude and commitment to her recovery" and "demonstrates

willingness and expresses the desire to stay clean." All of Mother's drug tests from the day of admittance to the treatment center were negative.

Also attached to Mother's petition was a letter from the maternal grandmother, stating that Mother's behavior had changed while in the rehabilitation program and that Mother "has shown improvement in her behavior." The maternal grandmother voiced her belief that, although she loved having the children in her home and that it would hurt her "tremendously" to see them leave, "it is only fair for my daughter to have another chance in caring for her children."

## I. *The Court Summarily Denies Mother's Section 388 Petition and Terminates Parental Rights at the Section 366.26 Hearing*

The juvenile court held the contested section 366.26 hearing on March 3, 2015. At the beginning of the hearing, the juvenile court stated: "The matter is set today for a review and a contested [section 366].26 hearing. We did have a brief conference. Ms. Johnson had asked the court about the [section] 388 petition. The court had indicated that I would be denying it because it is not timely, and the mother is out of reunification time."

Mother's counsel sought to address Mother's section 388 petition and asked the court to grant Mother an additional six months of family reunification services pursuant to section 366.3, subdivision (f), and not to terminate her parental rights. Counsel further argued that the parent-child beneficial relationship exception applied and precluded termination of Mother's parental rights.

Counsel for the children argued that they enjoyed visiting with Mother but they "view her as someone that they enjoy spending time with once a week in the Department's office for two hours. The caretaker is the maternal grandmother. The children do look to the maternal grandmother for their care, and she is the parental figure in their lives. The grandmother does have an approved home study and has expressed a desire to adopt to the social worker. The mother has been appropriate during her visits. There is nothing to indicate that her monitored visits are inappropriate. It's just—I don't

8

believe the contact with the children meets the exception as stated in [section] 366.26. Likewise, I don't believe that the mother's situation is one under *In re Elizabeth R.*[4] that would necessitate additional reunification services."

DCFS joined in the statement made by the children's counsel. It did not "believe there is anything in the record that shows Mother has gone above and beyond what the case law has identified as a friendly visitor status. Without question these children are adoptable. They are in a home where they have been cared for lovingly with an approved home study, and I don't believe that any evidence has been provided to the court which shows that an exception exists." DCFS asked the court to terminate parental rights.

After listening to counsels' comments, the juvenile court noted that the first petition was filed on December 5, 2012, two-and-a-half years earlier, when Haylee was under three years of age, and that "we are really far behind statutorily timeframewise [*sic*]." The court stated it was unable to find an exception or legal impediment to following DCFS's recommendation to terminate parental rights. The court found by clear and convincing evidence that the children were likely to be adopted and were adoptable and ordered that Mother's and Father's parental rights be severed and that the children be placed for adoption.

The juvenile court signed a written order on the section 388 petition on the same day as the hearing. The order stated the request is denied because: "This is not timely. Matter set for a contested [section] 366.26 hearing 3-3-15." The minute order for the March 3, 2015 hearing indicates: "The [section] 388 petition filed by Ms. Johnson, on behalf of the mother, on 2/27/15 is considered and is denied without a court hearing."

Mother timely appealed the orders denying her section 388 petition and terminating her parental rights.

---

4      *In re Elizabeth R.* (1995) 35 Cal.App.4th 1774.

**DISCUSSION**

Mother contends the juvenile court erred in finding the section 388 petition to be untimely. Mother argues that based on this erroneous conclusion, the juvenile court failed to exercise its discretion to consider whether the petition should be set for a hearing. Mother also argues because the petition presented a prima facie case, the juvenile court erred in not ordering a full hearing. DCFS argues the summary denial of the section 388 petition was proper, as the petition did not present a prima facie case justifying a hearing. We find the juvenile court failed to exercise its discretion with respect to the section 388 petition and reverse.[5]

**A.** *Applicable Law*

"In enacting section 388, the Legislature has provided a procedural vehicle to accommodate the possibility that circumstances may change after the reunification period, thereby justifying a change in a prior order." (*In re Jackson W.* (2010) 184 Cal.App.4th 247, 258.) Subdivision (a)(1) of section 388 provides: "Any parent or other person having an interest in a child who is a dependent child of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court . . . for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court. The petition shall be verified and, if made by a person other than the child . . . shall state the petitioner's relationship to or interest in the child . . . and shall set forth in concise language any change of circumstance or new evidence that is alleged to require the change of order or termination of jurisdiction."

---

[5] Both Mother and DCFS also present arguments concerning whether the beneficial parent-child relationship exception (§ 366.26, subd. (c)(1)(B)(i)) precluded termination of Mother's parental rights. As we reverse the order summarily denying the section 388 petition, we do not address those arguments.

Subdivision (d) of section 388 states that "[i]f it appears that the best interests of the child . . . may be promoted by the proposed change of order, . . . the court shall order that a hearing be held and shall give prior notice, or cause prior notice to be given, to the persons and in the manner prescribed by Section 386, and, in those instances in which the manner of giving notice is not prescribed by those sections, then in the manner the court prescribes."

"'Section 388 provides the "escape mechanism" that . . . must be built into the process to allow the court to consider new information.' [Citations.] The petitioner has the burden of showing by a preponderance of the evidence (1) that there is new evidence or a change of circumstances *and* (2) that the proposed modification would be in the best interests of the child. [Citations.]" (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 615-616.)

"Under section 388, a party 'need only make a prima facie showing to trigger the right to proceed by way of a full hearing.' [Citation.] The prima facie showing is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition. [Citation.] In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case. [Citation.] The petition must be liberally construed in favor of its sufficiency. [Citations.]" (*In re J.P.* (2014) 229 Cal.App.4th 108, 127.)

We review the juvenile court's summary denial of a section 388 petition for an abuse of discretion. (*In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1079; cf. *In re Y.M.* (2012) 207 Cal.App.4th 892, 920; *In re Mickel O.*, *supra*, 197 Cal.App.4th at p. 616.) We ""'will not disturb [a] decision unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations].'" [Citation.]" (*In re Mary G.* (2007) 151 Cal.App.4th 184, 205.)

""'[A] ruling otherwise within the trial court's power will nonetheless be set aside where it appears from the record that in issuing the ruling the court failed to exercise the discretion vested in it by law. [Citations.]" [Citation.] "Failure to exercise a discretion conferred and compelled by law constitutes a denial of a fair hearing and a deprivation of

fundamental procedural rights, and thus requires reversal.  [Citations.]" [Citation.]'
[Citation.]"  (*In re L.A.* (2009) 180 Cal.App.4th 413, 428; accord, *In re Marriage of
Rosenfeld & Gross* (2014) 225 Cal.App.4th 478, 485 ["'[a] trial court's failure to exercise
discretion is itself an abuse of discretion, and we review such action in accordance with
that standard of review'"].)

**B.  *Analysis***

We recognize that "[t]here is a 'limitation on the length of time a child has to wait
for a parent to become adequate.'"  (*In re J.P.*, *supra*, 229 Cal.App.4th at p. 124, quoting
*In re Marilyn H.* (1993) 5 Cal.4th 295, 308.)  Nonetheless, "throughout the reunification
period and thereafter, the parent has the continuing right to petition the court for a
modification of any of its orders based upon changed circumstances or new evidence
pursuant to section 388."  (*In re Marilyn H.*, *supra*, at pp. 308-309; accord, *In re
Zacharia D.* (1993) 6 Cal.4th 435, 454-455.)  "[T]he Legislature has provided the
procedure pursuant to section 388 to accommodate the possibility that circumstances may
change after the reunification period that may justify a change in a prior reunification
order.  A petition pursuant to section 388 may be used to raise the issue in the trial court
prior to the section 366.26 hearing."  (*In re Marilyn H.*, *supra*, at p. 309.)

The record reflects that the juvenile court repeatedly indicated that it was denying
the section 388 petition without a hearing on the basis that it was untimely, and that
Mother was out of reunification time.  Mother filed her petition prior to the scheduled
section 366.26 hearing.  Even though Mother had been given reunification services which
exceeded the minimum required and reunification services had been terminated,[6] the
section 388 petition was not untimely.  Thus, the juvenile court should have exercised its
discretion to determine whether to set a full hearing on the petition.  While the juvenile
court had discretion to summarily deny a hearing after considering whether the petition

---

[6]    Mother did not seek extraordinary writ relief from the order terminating her family
reunification services and setting the section 366.26 hearing.

12

presented a prima facie case, the record does not reflect that the juvenile court exercised that discretion here. Under these circumstances, summary denial of the section 388 petition was an abuse of discretion.

DCFS argues that the petition did not present a prima facie case for changing the order terminating reunification services, and thus the juvenile court's order summarily denying the petition without a hearing should be upheld. However, whether Mother's petition presented a prima facie case was never considered by the juvenile court.[7] We cannot conclude that based on the information presented in the petition, the juvenile court would have been required to summarily deny it without a hearing as a matter of law.

## DISPOSITION

The order summarily denying the section 388 petition is reversed. The order terminating parental rights is vacated. The matter is remanded to the juvenile court to consider whether a hearing should be held on the section 388 petition and to take further action in accordance with this opinion.

STROBEL, J.[*]

We concur:

PERLUSS, P. J.                    SEGAL, J.

---

[7]      We note the form order denying the section 388 petition gave the juvenile court the option to check a box indicating the petition was denied because it did not state a change of circumstances or that it did not promote the best interest of the child. The juvenile court did not check either of those boxes, but checked the box marked "Other" and wrote in "This is not timely."

[*]      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.