Filed 3/5/26  Marriage of Chernick CA1/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re the Marriage of JENNIFER CHERNICK and NOWELL CHERNICK. | |
| JENNIFER CHANG,<br><br>        Appellant,<br><br>v.<br><br>NOWELL CHERNICK,<br><br>        Respondent. | A171756<br><br>(Contra Costa County Super. Ct. No. MSD1704370) |

Jennifer Chang appeals the denial of her request to modify child support after the dissolution of her marriage to Nowell Chernick.  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In 2017, after 13 years of marriage, Chang filed for divorce.  Thereafter, Chang moved to Taiwan, where the parties had lived for much of their marriage.  In 2020, the family court temporarily awarded Chernick sole physical custody of the parties' two sons.

**A. Marital Settlement Agreement**

In May 2022, the parties resolved the issues of spousal support and property division in a marital settlement agreement (MSA).  As relevant

1

here, Chang received the couple's marital residence in Taiwan (which she later sold for approximately $2 million), valuable art pieces and jewelry that were collectively worth approximately $230,000, and numerous antiques from the marital residence. Chang also received several life insurance annuities with face values totaling $880,000, and she purchased three community art pieces valued at $577,150.

**B. Trial on Child Support and Legal Custody Issues**

Once the MSA was executed, the outstanding issues included legal custody and support of the children. These issues proceeded to a trial that took place over five days between April 27 and May 11, 2022.

With respect to the custody issue, the family court considered the history of interactions between Chang and her children during the divorce proceedings, Chang's decision to move to Taiwan for two years, and representations by the children's attorney regarding their wishes with respect to custody.

The evidence pertaining to support of the children included the following. Though Chang had a Ph.D. in art history and work experience in the marketing, product development, and nonprofit sectors, she had chosen to apply for a low-paying fellowship with a prestigious government institute and was earning a minimum wage salary. Chang received substantial funds from others to support her living expenses of $15,000 per month—six times Chang's monthly salary of $2,415. Denying these funds were gifts, Chang presented recently-signed promissory notes to show the funds were loans from her mother or other family members. Chang also claimed that she had only $23,723 in cash and liquid assets and that her mother was no longer providing her funds.

2

### C. Family Court's Statement of Decision

On September 26, 2022, the family court (Hon. Benjamin T. Reyes II) issued a statement of decision which granted permanent legal custody of the children to Chernick.

The family court also issued a child support order which included the following rulings ("2022 Child Support Order"). Despite finding that Chang was "underperforming in her salary potential," the court declined to impute income to Chang consistent with her earning ability because there was insufficient evidence regarding the job market in Taiwan.

As for other income, the family court found that Chang was receiving ongoing gift income from her family members in the amount of $20,000 per month. The court rejected Chang's contention that this money came from loans, noting none of her recently signed promissory notes bore the "hallmarks of a loan" such as interest charged, security or collateral, or a fixed maturity date.

The family court found Chang was not credible in testifying her mother was no longer providing her regular funds, given that Chang continued to receive "very significant funds" from both her mother and her mother's friends and relatives. As an example, the court observed that Chang purported to borrow $888,000, but this amount was $512,000 short of the $1.4 million in legal fees that Chang paid from September 2021 and March 2022, and Chang did not explain where she obtained the additional money. Nor did Chang explain how she paid an additional $200,000 in legal fees after March 2022 or her monthly expenses of $15,000. The court also pointed out that despite Chang's "claimed poverty," she elected to purchase Chernick's interest in the marital residence in Taiwan which had an agreed equity value

of $1.9 million.  She also exercised her option to purchase valuable pieces in the community art collection that had a combined value of $787,400.

Other credibility issues included Chang's inability to account for approximately $2.5 million that was deposited into and withdrawn from her individual bank account during marriage.  Additionally, Chang failed to disclose four life insurance policies she obtained between 2013 and 2017; belatedly disclosed the sale of one of those policies in 2019; and never reported the amount or whereabouts of the sale proceeds.  She also offered contradictory testimony about whether she worked for or received income from one of the companies owned by her mother; claimed a charitable contribution tax deduction in her 2020 tax return of over $38,000 based on her donation of property that belonged to her mother; and concealed a home in Berkeley that her mother purchased in 2016 for Chang's use.

Taking all of this together, the family court concluded Chang lacked credibility, had "clear access to funds when needed," and received regular and recurring gifts from her mother, family, and friends.  The court calculated Chang's child support obligation using her monthly income of $2,415 and imputed gift income of $20,000 per month, which resulted in a total child support payment of $5,033 per month.  The court also ordered that the parties share equally in the children's add-on expenses which included private school tuition and attendant costs.  Chang did not appeal this judgment.

### D. Intervening Post-Judgment Proceedings

Because Chang lived in Taiwan and had no plans to return to the United States, Chernick moved for an order to establish a child support security account to ensure her compliance with the 2022 Child Support Order.  The family court ordered the establishment of the requested account,

4

which was initially funded by Chang's one-half interest in community artwork.

In March 2023, Chang moved to modify the 2022 Child Support Order, claiming a material change of circumstances rendered her unable to pay child support and the add-on expenses. Specifically, Chang asserted that her two-year fellowship was ending in June 2023, and her family had not provided any gift income to her. Chang challenged the family court's prior imputation of gift income to her and claimed her mother was in poor health and did not have the resources to help her pay child support. The court (Commissioner Alexandria Quam) denied Chang's request and ruled that all previously-made orders would remain in effect.

Around September 2023, Chang fell into arrears after refusing to pay the children's add-on educational expenses. In response to Chernick's request for a determination of Chang's arrears, the family court found Chang owed Chernick more than $10,000.

**E. Chang's March 2024 Request to Modify Child Support**

In March 2024, Chang filed another request to modify the 2022 Child Support Order, arguing there was a material change in circumstances as she was suffering from "severe illness, disability, unemployment, and penury" as a result of Chernick's "aggressive litigation abuses." Claiming she had been referred to specialists for cardiology, colon and rectal operations, and trauma-focused therapy, Chang attached a January 2024 letter from Contra Costa Health stating she could make an appointment for colon and rectal surgery without a referral, and a January 2024 letter from Axis Community Health stating it had processed Chang's referral to a vascular surgery specialist. Chang also contended that Chernick had immense wealth while she "**NEVER** received any recurring income."

Before the hearing on Chang's modification request, the family court granted Chernick's request to investigate Chang's claims of unemployment and disability through a debtor's examination.

During the examination, Chernick's counsel asked Chang about large transfers of funds into Chang's bank account after the child support trial ended on May 11, 2022, including a $100,000 transfer from a friend on May 23, 2022, a $99,547 transfer from Chang's mother in July 2022, and Chang's own transfer of approximately $200,000 from her Taiwanese bank account to herself from 2022 to 2023. Chang deflected these questions or claimed the funds were from promissory notes. Chernick's counsel also asked about Chang's mother's ability to provide Chang with funds, but Chang claimed her mother was "impoverished." When pressed further, however, Chang admitted her mother still had an estate of at least $5 million as she continued to own two properties in California.

Chang also admitted during the examination that she had sold the marital home in Taiwan for approximately $2.17 million in August 2022. She claimed, however, that this money had been "completely emptied out [and] spent" on paying back loans, legal fees, and Chernick. Upon further inquiry, Chang could not specify the amounts she repaid to each of the individuals she claimed lent her money.

When asked about several valuable paintings Chang acquired from the community as part of the MSA, Chang said they did not belong to her anymore, and she "believe[d]" that family members who lent her money to pay for the trial owned them. However, Chang admitted she never signed any paperwork to document the transfer of ownership of the paintings to her relatives. Chang also stated that several life insurance policies she owned

6

were surrendered or canceled but she could not state the amounts she received for them.

When asked about her living situation, Chang admitted she was living rent-free at a $2 million home in Berkeley. She claimed she was "house-sitting" but could not state how long the housesitting assignment was for. She also refused to disclose the identity of the individual who owned the home.

As for her claimed disability, Chang stated she had an angioplasty, an endoscopy, a blood clot, a knee injury, and possibly a "brain injury" or "PTSD." She also represented she had one to three medical appointments per week. Chang could not, however, specify any diagnosed condition, stating she had received only a "temporary diagnosis" or was "waiting for a diagnosis." She also acknowledged that, notwithstanding her disability, she would be able to work at a desk job. With respect to her efforts to find employment, Chang stated she had only applied for positions at Stanford and the University of California at Berkeley but had not applied for any other positions for which she would be qualified, i.e., art gallery, auction house, or museum positions.

Chernick provided a transcript of Chang's debtor's examination with his opposition to Chang's modification request. He also provided documentation indicating that from May 23, 2022 to August 2022, Chang received deposits of approximately $200,000 in her bank account from her mother and a family friend. This documentation also indicated Chang transferred about $128,000 from her Taiwanese bank account to herself between July 2022 and May 2023.

### F. Hearing on March 2024 Request to Modify Child Support

On October 2, 2024, the family court (Commissioner Alexandria Quam) held a hearing on Chang's request to modify the 2022 Child Support Order. Asserting a material change in circumstances, Chang claimed she did not have the ability to pay because she was "on public welfare"; she was on disability and unemployed; and she had upcoming medical appointments. However, when the court asked whether Chang had documentation from a medical provider stating she was unable to work due to her health problems, Chang was unable to locate or point the court to any such documentation despite insisting it had been filed. Instead, she asserted that "all the evidence has already been in court" and "it's just a matter of excavating all the information that [she'd] already served."

The family court also inquired about the millions of dollars' worth of cash and assets Chang received from the marriage dissolution. In response, Chang claimed that her portion of the assets was only worth $235,000 despite also acknowledging that she had sold the parties' marital home in Taiwan for $2.1 million. Chang asserted she had spent the home sale proceeds on legal fees, child support payments, and reimbursements for loans her mother purportedly took to help pay for the trial in this matter. She also claimed she spent some of the $330,000 that had been transferred into her bank account after April 2022 on child support payments. Finally, Chang pointed out that Chernick himself was a very wealthy individual.

In response, Chernick highlighted Chang's acknowledgement in her debtor's examination that she had not been diagnosed with an actual injury. Chernick also reminded the family court the prior judicial officer handling the matter had previously found that Chang had received gifts—not loans— from her family. Thus, there were no loans to pay back, and Chang's

8

transfers of funds to third parties were a fraud against Chang's creditors. Plus, Chang continued to own art and jewelry worth hundreds of thousands of dollars and was living rent free in a million-dollar home. Chernick urged the court to deny modification of its previous imputation to Chang of $20,000 in monthly gift income.

The family court determined Chang had not met her burden to demonstrate a material change in circumstances. First, the court observed Chang's income and expense declaration appeared to indicate she was meeting $14,000 in monthly expenses.[1] Additionally, the discovery produced by Chernick revealed Chang continued to have "enormous sums" of money going in and out of her bank account. As such, the court refused to modify the child support order.

This appeal followed.

## DISCUSSION

Chang asserts the family court abused its discretion in finding there had been no change in material circumstances warranting a modification of the terms of the 2022 Child Support Order. More particularly, she argues the court erred in "ignoring" evidence that she was no longer receiving gift money and was experiencing deteriorating health. She also asserts the court failed to consider evidence of Chernick's ability to pay. Chang's contentions are not well taken.

Preliminarily, we observe that Chang's appellate briefing is substantially lacking. Her presentation is rife with defects, ranging from her failure to include, discuss, or cite key portions of the record, to her failure to present all the relevant evidence and a cogent argument regarding the issues

---

[1]     Chang did not include this income and expense declaration in the record she filed on appeal.

9

raised on appeal. For instance, the family court concluded there had been no change in material circumstances based on income and expense declarations filed by Chang indicating her continuing ability to meet $14,000 in monthly expenses. Yet Chang did not provide any of these declarations in her record on appeal. Additionally, Chang provides an incomplete and one-sided presentation of the evidence submitted in connection with her request to modify. Notably, her appellate submissions fail to include, among other things, the transcript of Chernick's debtor examination. Chang's arguments on appeal are also difficult to follow as some consist merely of repetitions or clarifications of statements she made at the hearing, without any explanation as to how such statements demonstrate judicial error or abuse of discretion. Each of these deficiencies is fatal.

It is a cardinal rule of appellate review that a "trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609 (*Jameson*).) " 'A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed.' " (*Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416.) Similarly, to avoid waiver of a challenge that the evidence is insufficient to support a trial court finding, an appellant must "set forth, discuss, and analyze *all* the evidence on that point, both favorable and unfavorable." (*Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 218, italics added.) An appellant must also supply the reviewing court with a cogent argument supported by legal analysis and citations to the record. (*County of Los Angeles v. Niblett* (2025) 116

10

Cal.App.5th 454, 463 (*County of Los Angeles*).) These rules apply equally to self-represented litigants. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246 (*Nwosu*).)

Here, the deficiencies in Chang's presentation on appeal effectively amount to a forfeiture of her claims of error. (See *Nwosu*, *supra*, 122 Cal.App.4th at pp. 1246–1247.) Nonetheless, even if we were to reach the merits of Chang's challenge—aided by Chernick's augmentation of the record to fill in the gaps left by Chang—we would conclude that Chang fails to carry her burden of demonstrating the family court abused its discretion in denying her March 2024 request to modify child support.

A child support order may be modified or terminated at any time the family court deems necessary. (Fam. Code, § 3651, subd. (a).)[2] But modifications generally are unwarranted unless there has been a " ' "material change of circumstances since the last order." ' " (*In re Marriage of Minkin* (2017) 11 Cal.App.5th 939, 956; see also *In re Marriage of Stanton* (2010) 190 Cal.App.4th 547, 554 [absent a change of circumstances, a motion for modification is nothing more than an impermissible collateral attack on a prior final order].) Though there are " 'no rigid guidelines' " for determining if there has been a change sufficient to warrant the modification of a child support order, courts generally focus on whether there has been " 'a reduction or increase in the supporting spouse's ability to pay and/or an increase or decrease in the supported [party's] needs.' " (*In re Marriage of Usher* (2016) 6 Cal.App.5th 347, 358 (*Usher*).) "The burden of proof to establish changed circumstances sufficiently material to support an adjustment in child support rests with the party seeking modification." (*Id.* at pp. 357–58.) "The ultimate determination of whether the individual facts of the case warrant

---

[2]    All undesignated statutory references are to the Family Code.

11

modification of support is within the discretion of the trial court." (*In re Marriage of Leonard* (2004) 119 Cal.App.4th 546, 556 (*Leonard*).)

A ruling on a request for modification of a child support order "will be affirmed unless the trial court abused its discretion, and it will be reversed only if prejudicial error is found from examining the record below." (*Leonard, supra,* 119 Cal.App.4th at p. 555.) Under this standard, "we review the trial court's legal conclusions de novo and its factual findings for substantial evidence, and we reverse its application of the law to the facts only if it was arbitrary and capricious." (*Swan v. Hatchett* (2023) 92 Cal.App.5th 1206, 1215.)

Here, substantial evidence supports the family court's conclusion that Chang had failed to meet her burden of demonstrating a change of circumstances warranting modification of the 2022 Child Support Order. Though Chang argued she was unable to fulfill her child support obligations because she was now on public welfare and disabled, she did not produce evidence that substantiated her assertions.

With respect to Chang's claims of disability, the record indicates Chang submitted documents indicating she was seeking referrals for a colon and rectal surgery as well some type of vascular surgery. But at no point did Chang submit documentation from a medical provider identifying a diagnosis or stating she was unable to work due to her health problems. Further, when asked at the hearing if she had such documentation, Chang was unable to direct the court to any documents despite insisting they had been filed. And disregarding the burden she carried in moving to modify child support, Chang suggested the court itself should "excavat[e]" this information from the papers she had already served.

On appeal, Chang acknowledges she was "unable to locate [the requested] documentation in open court." But even now she still fails to identify any document in the record that rectifies the deficiency of her showing at the hearing.

As for the issue of gift money and Chang's ability to pay child support, what is apparent from the record is that Chang acknowledged at the hearing that she had received hundreds of thousands of dollars' worth of assets through the marriage dissolution, and that she had sold the parties' marital home in Taiwan for $2.1 million. Moreover, Chang did not dispute that $330,000 had been transferred into her bank account after the child support trial concluded in May 2022. When asked at the hearing where these funds had gone, Chang vaguely asserted that the "discovery" produced indicated "how that money disbursed," which apparently included payments for legal fees, child support payments, and reimbursements for loans her mother purportedly obtained to help her pay for the trial. These vague responses echoed Chang's evasive statements in the debtor's examination that she had spent the $2.1 million received from her sale of the Taiwanese marital home but could not specify the amounts repaid to the individuals who purportedly loaned her money. Chang's prevarication was also evident in her questionable claim that she had given valuable community artwork to various family members despite also acknowledging that she never signed any paperwork documenting the transfer of ownership.

In the face of such vague and doubtful explanations, the family court reasonably concluded that Chang did not establish a change of circumstances.

Chang nonetheless argues the family court asked few questions about whether she was still receiving gift money, and she reiterates that she spent

13

some of the enormous sums deposited in her bank account on child support payments. But her appellate assertion that she paid $500,000 in child support over the past two-and-a-half years does not square with the evidence that such amount exceeded the $330,000 that had been transferred to her bank account.

In sum, Chang falls short on her claim of a material change in circumstances that rendered her unable to maintain her child support payments. Not only do many of her contentions lack references to any record support (see *County of Los Angeles*, *supra*, 115 Cal.App.5th at p. 463), but she does not dispute her receipt of $330,000 in funds after the child support trial concluded in May 2022. Chang also fails to address the issue of accessible funds via the valuable assets she received after the marriage dissolution.

As a final matter, Chang contends the family court abused its discretion in failing to explore Chernick's ability to pay. She does not, however, explain how Chernick's income changed since the last child support order. Instead, Chang merely argues that in 2021—a date *preceding* the 2022 Child Support Order—Chernick claimed his income was less than $200,000 despite earnings of more than $600,000. This showing is plainly insufficient to meet Chang's burden of demonstrating a material change of circumstances warranting a modification of the support order. (See *Jameson*, *supra*, 5 Cal.5th at p. 609.)

## DISPOSITION

The judgment is affirmed. In the interests of justice, the parties shall bear their own costs. (Cal. Rules of Court, rule 8.278(a)(5).)

14

_____
Fujisaki, Acting P. J.

WE CONCUR:


_____
Petrou, J.


_____
Rodríguez, J.


*Chang v. Chernick* (A171756)